Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHANDRA VANIPENTA, Individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| SVB FINANCIAL GROUP, GREG W. BECKER, and DANIEL BECK, | |
| Defendants. | |

Plaintiff Chandra Vanipenta ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SVB Financial Group ("SVB" or the "Company"), analysts' reports and advisories about the Company, and other information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of SVB between June 16, 2021 and March 10, 2023, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.    Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district. Further, the Company maintains an office within this judicial district.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

Class Action Complaint for Violation of the Federal Securities Laws

6.      Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.      Defendant SVB purports to be "a diversified financial services company, as well as a bank holding company and a financial holding company. SVB Financial was incorporated in the state of Delaware in March 1999. Through our various subsidiaries and divisions, we offer a diverse set of banking and financial products and services to clients across the United States, as well as in key international innovation markets. For nearly 40 years, we have been dedicated to helping support entrepreneurs and clients of all sizes and stages throughout their life cycles, primarily in the technology, life science/healthcare, private equity/venture capital and premium wine industries."

8.      The Company is incorporated in Delaware with its headquarters in Santa Clara, California. Before trading was halted on March 10, 2023, SVB common stock traded on the NASDAQ exchange under the ticker symbol "SIVB". SVB's preferred stock, under the ticker symbol "SIVBP", also traded on the Nasdaq until trading was halted on March 10, 2023.

9.      Defendant Greg W. Becker ("Becker") has served as SVB's Chief Executive Officer ("CEO") since 2011.

10.     Defendant Daniel Beck ("Beck") has served as SVB's Chief Financial Officer ("CFO") since 2017.

11.     Defendants Becker and Beck are sometimes referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

Class Action Complaint for Violation of the Federal Securities Laws

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background Information

16.     On June 16, 2021, The Chairman of the United States Federal Reserve (the "Fed"), Jerome ("Jay") Powell, gave remarks regarding, among other things, future interest rate hikes. He also discussed future action that the Fed would be willing to take to combat inflation, including by raising interest rates. Powell's remarks were widely reported. On June 16, 2021, *The Financial Times* released an article entitled "Fed signals first rate rise will come in 2023."

17.     On March 7, 2023, it was announced that the Federal Reserve would raise interest rates to higher levels than previously considered, and at faster rates. On March 7, 2023, *The New York Times* released an article entitled "Fed Chair Opens Door to Faster Rate Moves and a Higher Peak." The article quoted Powell, who told the U.S. Senate Banking Committee "[t]he process of getting inflation back down to 2 percent has a long way to go and is likely to be bumpy[.] The latest

economic data have come in stronger than expected, which suggests that the ultimate level of interest rates is likely to be higher than previously anticipated."

### False and Misleading Statements

18.     On August 6, 2021, SVB filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2021 (the "2Q21 Report"). Attached to the 2Q21 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

19.     The 2Q21 Report did not disclose the risk that future interest rate hikes posed to the Company's business, despite the Fed signaling that it might raise interest rates in the future, and was certainly prepared to do so in the event of rising inflation. The 2Q21 Report stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2020 Annual Report on Form 10-K." (the "2020 Annual Report").

20.     The 2020 Annual Report, incorporated by reference, understated the risks posed to the Company by not disclosing that likely interest rate hikes, as outlined by the Fed, had the potential to cause irrevocable damage to the Company. The 2020 Annual Report stated, in general terms, "[o]ur interest rate spread has and may continue to decline in the future. Any material reduction in our interest rate spread could have a material adverse effect on our business, results of operations or financial condition." Further, "[l]iquidity risk could impair our ability to fund operations and jeopardize our financial condition."

21.     On November 8, 2021, SVB filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2021 (the "3Q21 Report"). Attached to the 3Q21 Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

Class Action Complaint for Violation of the Federal Securities Laws

22.     The 3Q21 Report did not disclose the risk that future interest rate hikes posed to the Company's business, despite the Fed signaling that it might raise interest rates in the future, and was certainly prepared to do so in the event of rising inflation. The 3Q21 Report stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2020 Annual Report on Form 10-K."

23.     On March 1, 2022, SVB filed with the SEC its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

24.     The 2021 Annual Report understated the risks posed to the Company by not disclosing that likely interest rate hikes had the potential to cause irrevocable damage to the Company. Specifically, the 2021 Annual Report stated, "[o]ur interest rate spread may decline in the future. Any material reduction in our interest rate spread could have a material adverse effect on our business, results of operations or financial condition." Further, "[l]iquidity risk could impair our ability to fund operations and jeopardize our financial condition."

25.     On May 6, 2022, SVB filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2022 (the "1Q22 Report"). Attached to the 1Q22 Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. The 1Q22 Report stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K." (the "2021 Annual Report").

26.     On August 8, 2022, SVB filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2022 (the "2Q22 Report"). Attached to the 2Q22 Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of

financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. The 2Q22 Report stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K." (the "2021 Annual Report").

27.    On November 7, 2022, SVB filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. The 3Q22 Report stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K." (the "2021 Annual Report").

28.    On February 24, 2022, SVB filed with the SEC its annual report on Form 10-K for the period ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to SOX signed by Defendants Becker and Beck attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

29.    The 2022 Annual Report understated the risks posed to the Company by not disclosing that interest rate hikes had the potential to cause irrevocable damage to the Company. Speaking in merely general terms, the 2022 Annual Report disclosed that "[o]ur interest rate spread may decline further in the future. Any material reduction in our interest rate spread could have a material adverse effect on our business, results of operations or financial condition." Further, it stated, "[l]iquidity risk could impair our ability to fund operations and jeopardize our financial condition."

30.    The statements referenced in ¶¶18-29 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business which were known to Defendants or recklessly disregarded by them.

Class Action Complaint for Violation of the Federal Securities Laws

Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company failed to disclose to investors the risks presented by impending rising interest rates; (2) the Company failed to disclose to investors that, in an environment with high interest rates, it would be worse off than banks that did not cater to tech startups and venture capital-backed companies; (3) the Company failed to disclose that, if its investments were negatively affected by rising interest rates, it was particularly susceptible to a bank run; (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

### The Truth Begins to Emerge

31.     On March 8, 2023, after trading hours, the Company released a Press Release entitled, "SVB Financial Group Announces Proposed Offerings of Common Stock and Mandatory Convertible Preferred Stock." (the "March 8 Press Release").

32.     In the March 8 Press Release, the Company announced, in pertinent part, the following:

> [SVB] *intends to offer $1.25 billion of its common stock and $500 million of depositary shares, consisting of 10 million depositary shares each representing a 1/20th interest in a share of its Series F Mandatory Convertible Preferred Stock ("Preferred Stock"), liquidation preference $1,000 per share (equivalent to a liquidation preference of $50 per depositary share), in separate underwritten registered public offerings*. In addition, prior to commencing the offerings, SVB entered into a subscription agreement with General Atlantic, a leading global growth equity investor, to purchase $500 million of common stock at the public offering price in the offering of common stock in a separate private transaction. The subscription agreement with General Atlantic is contingent on the closing of the offering of common stock and is expected to close shortly thereafter. SVB also intends to grant (i) the underwriters in the common stock offering an option to purchase up to an additional $187.5 million of common stock and (ii) the underwriters in the Preferred Stock offering an over-allotment option to purchase up to an additional $75 million, or 1.5 million depositary shares in the Preferred Stock offering. SVB intends to use the net proceeds from the offerings for general corporate purposes. The consummation of each offering is not contingent upon the consummation of the other offering.
>
> Additionally, earlier today, SVB completed the sale of substantially of its available for sale securities portfolio.  *SVB sold approximately $21 billion of securities, which will result in an after tax loss of approximately $1.8 billion in the first quarter of 2023*.

(Emphasis added).

33.     The March 8 Press Release triggered immediate concerns by the Company's clients about its ability to continue to function, and the safety of their deposits, because, as reported by *The New York Times*, "[l]ike all its peers, and consistent with regulations, Silicon Valley Bank holds only a small portion of its customer deposits in cash available to be immediately withdrawn. The vast majority are either lent to other customers or invested to earn a return. That raises the specter that a rush of withdrawals would leave it unable to pay."

34.     On this news the price of the Company's stock lost more than half of its value from a closing price of $267.83/share on March 8, 2023 to $106.04/share on March 9, 2023.

35.     It quickly emerged that the culprit behind the liquidity crisis that caused SVB's eventual collapse was rapidly rising interest rates. On March 9, 2023, *The Wall Street Journal* released an article entitled "Banks Lose Billions in Value After Tech Lender SVB Stumbles." The article stated, in pertinent part "Thursday's rout (in reference to broad declines in stock prices across the bank sector) is another consequence of the Federal Reserve's aggressive campaign to control inflation. Rising interest rates have caused the value of existing bonds with lower payouts to fall in value. Banks own a lot of those bonds, including Treasury's, and are now sitting on giant unrealized losses."

36.     The same article stated, "[t]he bank's (SVB) assets and deposits almost doubled in 2021, large amounts of which SVB poured into U.S. Treasuries and other government-sponsored debt securities. Soon after, the Fed began raising rates. ***That battered the tech startups and venture-capital firms Silicon Valley Bank serves, sparking a faster-than-expected decline in deposits that continues to gain steam***." (Emphasis added).

37.     On March 9, 2023, *Markets Insider* (affiliated with *Business Insider*) released an article entitled "SVB plummets 60% after higher interest rates spark billions in losses on a $21 billion bond portfolio." The article stated, in pertinent part,

> "***The big losses experienced by the bank are directly related to the surge in interest rates over the past year, as the company's US Treasury holdings were bought at a time when interest rates were still relatively low. Bond prices fall as yields rise***.

*According to SVB Financial's updated investor deck, the company's $21 billion bond portfolio had a yield of 1.79% and a duration of 3.6 years. Today, the 3-Year US Treasury note yields 4.7%, a far-cry from the levels at which the bank bought the Treasury notes prior to 2022*. But with the IPO market essentially closed over the past year, SVB Financial has seen an ongoing decline in deposits.

*Also hurting SVB Financial is the fact that it mainly lends to venture capital and private tech companies that often rely on the IPO market to cash in their equity stakes and raise money that is often held at the bank, helping boost its deposits*."

(Emphasis added).

38.     On March 10, 2023, trading in the Company's shares were halted and remain halted as the filing of this action, essentially rendering the Company's shares illiquid and valueless- given the bank's failure described below.

39.     On March 10, 2023, Bloomberg released an article entitled "SVB Blowout is Wake-up Call for Stock Bulls on Banking Risks." The article quoted Charles-Henry Monchau, chief investment officer at Banque SYZ, a Swiss bank, as stating "Banks have been caught off guard by the Fed's rapid increase in interest rates and the draining of excess liquidity from the financial system. This has concurrently led to and a pile of losses on bank balance sheets." Further. "[f]or sure, SVB could somewhat be seen as an extreme (and hopefully isolated) event. But it's fair to say that the double whammy of bond losses on bank balance sheets and a flight of customer deposits is creating a risk for many US banks."

40.     On March 10, 2023, the California Department of Financial Protection and Innovation took over SVB after the bank tried and failed to find a buyer. SVB's deposits were transferred to the Federal Deposit Insurance Corporation ("FDIC"). In the order taking possession of SVB, the California Department of Financial Protection and Innovation stated that its findings were as follows: "(1). The Bank's liquidity position is inadequate, and it cannot reasonably be expected to pay its obligations as they come due. (2). The Bank is insolvent. (3). The Bank is conducting its business in an unsafe manner due to its present financial condition."

41.     The takeover put about $175 billion in customer deposits under the direct control of the FDIC. The failure of SVB was the largest bank failure since the 2008 financial crisis.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

- 10 -

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of the Company during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

•       whether the federal securities laws were violated by Defendants' acts as alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

48. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the Company's securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- • the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- • Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- • employed devices, schemes and artifices to defraud;

Class Action Complaint for Violation of the Federal Securities Laws

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

55.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

56.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

57.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

58.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

59.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

60.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

### COUNT II

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

61.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

65.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Class Action Complaint for Violation of the Federal Securities Laws

Date: March 13, 2023

Respectfully submitted,

**/s/Laurence M. Rosen**

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN
219683) 355 S. Grand Avenue, Suite
2450
Los Angeles, CA 90071
Telephone: (213) 785-2610 Facsimile:
(213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws