UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SVB Financial Group Securities Litigation | Case No. 3:23-cv-01097-JD<br><br>**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND SETTING CASE SCHEDULE** |

The Court orders as follows in this securities putative class action.

### I. CONSOLIDATION

Plaintiffs Mahendra Sreerama, Tamir Einy, KBC Asset Management NV (KBC), Norges Bank (Norges), and Sjunde AP-Fonden (AP7) ask to consolidate this case with six later-filed cases in this District: *Snook v. SVB Financial Group* (3:23-cv-01173), *Siddiqui v. Becker* (3:23-cv-01228), *Hialeh Employees v. Becker* (3:23-cv-01697), *International Union of Operating Engineers v. SVB* (3:23-cv-01962), *Stevenson v. Becker* (4:23-cv-02277), and *Rossi v. Becker* (3:23-cv-02335). *See* Dkt. Nos. 31, 35, 38, and 44. The motions are unopposed.

Federal Rule of Civil Procedure 42(a) permits consolidation of "actions involving a common question of law or fact." Fed. R. Civ. P. 42(a). "Consolidation is within the broad discretion of the district court." *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987).

For *Stevenson* (4:23-cv-02277) and *Rossi* (3:23-cv-02335), the Court will determine whether consolidation is appropriate only after resolution of the remand issue, which remains pending before another court in this District. *See* Dkt. No. 52. Consolidation of these cases is ordered: *Vanipenta* (3:23-cv-01097), *Snook* (3:23-cv-01173), *Siddiqui* (3:23-cv-01228), *Hialeh Employees* (3:23-cv-01697), *International Union of Operating Engineers* (3:23-cv-01962). Consolidation is warranted because these cases feature largely overlapping and common questions

of law and fact. They allege substantially similar claims under the Exchange Act and Securities Act against common defendants, across overlapping class periods, and concerning the same conduct. The cases are consolidated into the lowest-numbered case, 3:23-cv-01097, which will be re-captioned *In re SVB Financial Group Securities Litigation.* The other four cases will be closed.

## II. APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

Putative class members filed four competing motions seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act (PSLRA), 17 U.S.C. § 78u-4(a)(3)(B)(i). Dkt. Nos. 31, 35, 38, and 44. Two parties -- Sreerama and Einy -- no longer seek appointment as lead plaintiff. *See* Dkt No. 46 (Einy's notice of non-opposition); Dkt. No 47 (Sreerama's notice of withdrawal). Two proposed lead plaintiffs remain: KBC, and a group comprising Norges and AP7. Dkt. Nos. 38, 44.

The PSLRA establishes a three-step process for appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). First, the plaintiff in the first-filed action must "publiciz[e] pendency of the action, the claims made and the purported class period" in a "widely circulated national business-oriented publication or wire service." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (citing 15 U.S.C. § 78u-4(a)(3)(A)). The parties do not dispute that this step was adequately completed by plaintiff Vanipenta. *See* Dkt. No. 32-1.

The Court next considers the "potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732. The Court "must calculate each potential lead plaintiff's financial interest in the litigation" using a method that is "both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. KBC has suffered losses of approximately $8.9 million on a LIFO basis. Dkt. No. 38-3. Norges and AP7 have suffered losses of approximately $138.4 and $23.5 million on a LIFO basis, respectively, for a combined loss of approximately $161.8 million. Dkt. No. 44-3.

Because Norges and AP7 have the largest financial interest in the litigation, the Court "focus[es its] attention on [those] plaintiff[s] and determine . . . whether [they] satisf[y] the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306

1   F.3d at 730. As established by Norges and AP7's pleadings, Dkt. No. 44 at 1-12, they have made

2   a prima facie showing of typicality and adequacy. Consequently, the group comprising Norges

3   and AP7 is the presumptive "most adequate plaintiff" under the PSLRA. 15 U.S.C. § 78u-

4   4(a)(3)(B)(iii)(I).

5         In the third and final step, other plaintiffs may rebut the presumptive lead plaintiff's

6   showing that it satisfies Rule 23's typicality and adequacy requirements. *Cavanaugh*, 306 F.3d at

7   730. Competing movants must point to evidence of inadequacy. *In re Mersho*, 6 F.4th 891, 901

8   (9th Cir. 2021).

9         KBC, also seeking appointment as lead plaintiff, says that Norges and AP7 are improper

10  lead plaintiffs because they are a group lacking a genuine, pre-existing relationship. Dkt. No. 50

11  at 3. KBC did not proffer any independent evidence on this score, and relies solely on critiquing

12  the joint Norges/AP7 declaration. *Id.* at 4-7.

13        KBC's objection is not well taken. Neither the PSLRA, nor this Court's prior rulings in *In

14  re Stitch Fix Securities Litigation* and *In re Zoom Securities Litigation*, categorically bars groups

15  from appointment as lead plaintiff. The consideration of "pre-litigation relationships or cohesion"

16  must be tethered, in some way, to the burden-shifting process established in the PSLRA. *Mersho*,

17  6 F.4th at 901-2. The Court evaluates group cohesion as part of the adequacy analysis. *Id.* If

18  evidence indicates group members might not "work together well" or "be able to control counsel,"

19  they may not adequately represent class member interests. In *Stitch Fix*, the Court declined to

20  permit aggregation and lead plaintiff status for a group where the facts established that the "lawyer

21  [would] call the shots." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-6 (N.D. Cal.

22  2019). So, too, in *Zoom*, where the Court held that a lawyer-created group of individual investors

23  with no pre-existing relationships would be an inadequate plaintiff, because the group would be

24  directed by lawyers. Order re Lead Plaintiff and Lead Counsel, *In re Zoom Sec. Litig.*, No. 3:20-

25  cv-02353, Dkt. No. 56 (N.D. Cal. Nov. 4, 2020).

26        KBC has not demonstrated that any such concerns may be present here. It has not shown

27  that the group of Norges and AP7 is the product of lawyer-driven efforts. It bears mention that

28  Norges does not need its losses aggregated to secure lead plaintiff status: standing alone, its losses

3

eclipse those of other movants. Dkt. No. 44-3. KBC also did not demonstrate Norges and AP7 aggregated their claims at the behest of counsel. Their joint declaration states they sought litigation partners of their own volition. Dkt. No. 44-4 ¶¶ 10-12. This effectively forecloses KBC's complaint that the declaration "never address[es] *how* the group actually came together (i.e., was it through their lawyers' discussions?)." Dkt. No. 50 at 7. KBC offers no evidence in support of a contrary conclusion, and mere conjecture will not rebut the presumption. *See Mersho*, 6 F.4th at 901. KBC says that the joint declaration is silent on why Norges and AP7 retained two law firms, Dkt No. 50 at 7, but that circumstance is of little moment. There is no rule against multiple lead counsel, especially since Norges and AP7 have already negotiated retainer agreements with counsel containing favorable fee arrangements. Dkt. No. 44-4 ¶¶ 17-20. Finally, KBC questions why the joint declaration does not describe how Norges and AP7 will resolve their disputes, but that too does not raise an adequacy concern, particularly in light of Norges and AP7's unrebutted evidence of a multi-year prelitigation relationship. Dkt. No. 44-4 ¶ 11.

Overall, the record establishes that Norges and AP7 are sophisticated investors and experienced litigants in securities class actions who will run this litigation responsibly. Norges and AP7 are appointed as lead plaintiff in this consolidated action.

Under the PSLRA, the Court will also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 734 (citations omitted). Norges and AP7 propose to use the law firms of Bernstein Litowitz and Kessler Topaz. Dkt. No. 44. It is not the Court's practice to appoint multiple lead counsel. That typically does little more than eat up the class's recovery. In this case, Norges and AP& have obtained fee agreements that cap fee percentages, and so the Court will accept the appointment of two firms subject to caps. In addition, the Court appoints individual attorneys, not law firms generally. That better ensures accountability and the delivery of a high level of legal services. Neither firm identified a lead attorney. Consequently, appointment of lead counsel will be deferred pending a statement by the law firms of individuals for the Court to consider for appointment. The law firms are directed to file the statements by

December 18, 2023.

### III. CASE SCHEDULE

The lead plaintiff is directed to file a consolidated amended complaint 45 days from the date of this order. Defendants will have 30 days to respond to the complaint. If defendants file a motion to dismiss, plaintiff's response is due in 30 days, and any reply is due in 21 days. These dates are firm and will not be continued. A hearing is to be noticed no earlier than 21 days after the close of briefing.

The consolidated complaint will be the operative complaint and supersede all other complaints filed in the underlying actions that were consolidated into this case. Defendants need not respond to those prior complaints.

Pursuant to the PSLRA and the Federal Rules of Civil Procedure, and for the sake of clarity and efficient case management, the lead plaintiff is directed to set out in chart form its securities fraud allegations under the following headings on a numbered, statement-by-statement basis: (1) the speaker(s), date(s), and medium; (2) the false and misleading statements; (3) the reasons why the statements were false and misleading when made; and (4) the facts giving rise to a strong inference of scienter. An exemplar can be found at *In re Zoom Securities Litigation*, No. 3:20-cv-02353-JD, Dkt. No. 63-1. The chart may be attached to or contained in the consolidated complaint, but in any event will be deemed to be a part of the complaint.

**IT IS SO ORDERED.**

Dated: November 30, 2023

JAMES DONATO
United States District Judge