**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**
Salvatore J. Graziano (appearance *pro hac vice*)
(salvatore@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**
Sharan Nirmul (appearance *pro hac vice*)
(snirmul@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

[*Additional counsel listed on signature page.*]

*Lead Counsel for Lead Plaintiffs Norges Bank and*
*Sjunde AP-Fonden and Additional Plaintiffs Asbestos*
*Workers Philadelphia Welfare and Pension Fund, and*
*Heat & Frost Insulators Local 12 Funds and the*
*Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SVB FINANCIAL GROUP SECURITIES LITIGATION | Master File No. 3:23-cv-01097-JD<br><br>Consolidated Case Nos. 3:23-cv-01173-JD; 3:23-cv-01228-JD; 3:23-cv-01697-JD; 3:23-cv-01962-JD<br><br>**PLAINTIFFS' OPPOSITION TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>Date: August 1, 2024<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INDEX OF ABBREVIATIONS ............................................................................................... iv

NOTE ON CITATION FORMATS .............................................................................................v

I.      INTRODUCTION .........................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

III.    ARGUMENT .................................................................................................................2

      A.      The Ninth Circuit Cautions Against the "Overuse" of the Judicial Notice and
           Incorporation-By-Reference Doctrines...................................................................2

      B.      Plaintiffs Object to the Improper Use of Exhibits 1, 2, 32-38, and 48 .............................3

      C.      Plaintiffs Object to the Improper Use of Exhibits 39-41 ("News Articles") ....................12

      D.      The Court Should Not Judicially Notice or Incorporate-By-Reference Disputed
           Facts in SEC Filings...............................................................................................13

      E.      Defendants' Improper Application and Overuse of Judicial Notice Justifies Their
           Motions' Denial .....................................................................................................15

IV.     CONCLUSION.............................................................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelucci v. Mayorkas*,
 2021 WL 4523690 (S.D. Cal. Oct. 4, 2021) ................................................................. 3

*Azar v. Yelp, Inc.*,
 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ............................................................ 14

*Crowder v. LinkedIn Corp.*,
 2024 WL 1221956 (N.D. Cal. Mar. 21, 2024) .............................................................. 9

*DalPoggetto v. Wirecard*,
 2020 WL 2374948 (C.D. Cal. Apr. 15, 2020) ............................................................ 15

*Dfinity USA Rsch. LLC v. Bravick*,
 2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ........................................................... 4-5

*GOJO Indus., Inc. v. Barough*,
 2018 WL 5880829 (C.D. Cal. Apr. 2, 2018) ................................................................ 2

*Hodges v. Akeena Solar, Inc.*,
 2010 WL 3705345 (N.D. Cal. May 20, 2010) ............................................................ 14

*HomeLight, Inc. v. Shkipin*,
 2022 WL 16528142 (N.D. Cal. Oct. 28, 2022) ............................................................ 2

*Jones v. Corus Bankshares, Inc.*,
 701 F. Supp. 2d 1014 (N.D. Ill. 2010) ...................................................................... 14

*Karri v. Oclaro, Inc.*,
 2020 WL 5982097 (N.D. Cal. Oct. 8, 2020) (Donato, J.) .......................................... 13

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ...........................................................................*passim*

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) .................................................................................... 1

*Longo v. OSI Sys., Inc.*,
 2020 WL 3124221 (C.D. Cal. Mar. 11, 2020) ................................................... 4, 7, 15

*Maiman v. Talbott*,
 2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) ....................................................... 13, 14

*Mills v. Molina Healthcare, Inc.*,
 2022 WL 17825534 (C.D. Cal. Dec. 8, 2022) .......................................................2-3, 12

*Morris v. Smith Micro Software, Inc.*,
 2012 WL 12948541 (C.D. Cal. May 21, 2012) .......................................................... 14

*Rollins v. Dignity Health*,
  338 F. Supp. 3d 1025 (N.D. Cal. 2018) ............................................................................ 1

*In re Silver Wheaton Corp. Sec. Litig.*,
  2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) .............................................................. 14

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ........................................................................................ 14

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................................... 3

*Wasjutin v. Bank of Am., N.A.*,
  732 F. App'x 513 (9th Cir. 2018) .................................................................................... 2

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......................................................................... 2

*In re Zoom Sec. Litig.*,
  2022 WL 484974 (N.D. Cal. Feb. 16, 2022) (Donato, J.) ............................................ 13

**Other Authorities**

Fed. R. Evid. 201 ................................................................................................... 2, 12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

**INDEX OF ABBREVIATIONS**

| ABBREVIATION | DEFINITION |
|---|---|
| Bank or SVB | Silicon Valley Bank Financial Group |
| Beck | Daniel J. Beck, SVB's former Chief Financial Officer |
| Becker | Gregory W. Becker, SVB's former Chief Executive Officer |
| CAMELS | Composite rating assigned in accordance with guidelines provided under the Uniform Financial Institution Rating system |
| Class Period | January 21, 2021, and March 10, 2023, inclusive |
| Defendants | Collectively, Exchange Act Defendants and the Securities Act Defendants |
| Director Defendants | Roger Dunbar, Eric Benhamou, Elizabeth Burr, John Clendening, Richard Daniels, Alison Davis, Joel Friedman, Jeffrey Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate Mitchell, and Garen Staglin |
| Exchange Act Defendants | Collectively, Becker and Beck |
| Federal Reserve | Collectively, the Board of Governors of the Federal Reserve System and the Federal Reserve of San Francisco |
| HTM | Held-to-maturity |
| MRA | Matters Requiring Attention |
| MRIA | Matters Requiring Immediate Attention |
| Plaintiffs | Lead Plaintiffs Norges Bank and Sjunde AP-Fonden and additional plaintiffs Asbestos Workers Philadelphia Welfare and Pension Fund and Heat & Frost Insulators Local 12 Funds |
| Rule(s) | Federal Rule(s) of Civil Procedure |
| SEC | U.S. Securities and Exchange Commission |
| Securities Act Defendants | Collectively, the Director Defendants, the Underwriter Defendants, and Karen Hon |
| Underwriter Defendants | BofA Securities, Inc., Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Morgan Stanley & Co. LLC |

*Any terms not contained in this chart have the same meaning ascribed to them in the Complaint.

1

## **NOTE ON CITATION FORMATS**

2

Unless otherwise stated, all emphases and ellipses in citations used herein have been added and all

3

quotations, internal quotation marks, citations, and all original emphases have been omitted and all original

4

alterations have been incorporated.

5

Commonly used citations in this brief take the following form:

6

| Citation | Description |
|---|---|
| ¶[•] | Paragraph in the Complaint |
| §[•] | Section in the Complaint |
| #[•] or Statement No. | Numbered alleged misstatements in Exhibit 1 to the Complaint, Dkt. 88-1 |
| Complaint | Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (Dkt. 88) |
| Exchange Act MTD | Defendants' Notice of Motion and Motion to Dismiss Exchange Act Claims in Consolidated Amended Class Action Complaint, Dkt. 121 |
| Exhibit(s) or Ex(s). | Exhibits attached to Defendants' Request for Judicial Notice, Dkts. 122-1 through 122-49 |
| Request for Judicial Notice | Request for Judicial Notice in Support of Defendants' Motions to Dismiss Consolidated Amended Class Action Complaint, Dkt. 122 |
| Securities Act MTD | Defendants' Notice of Motion to Dismiss Claims Under the Securities Act of 1933 (Counts IV, V, and VI); Memorandum of Points and Authorities in Support of Motion to Dismiss, Dkt. 125 |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Plaintiffs respectfully submit this opposition to Defendants'[1] Request for Judicial Notice.

## I.     INTRODUCTION

Defendants seek to use their Request for Judicial Notice of 49 Exhibits to "*show that SVB's management was highly responsive to regulator feedback and that the Defendants at all times acted in good faith in the best interests of SVB, its shareholders, and its customers*." Exchange Act MTD at 1. The Complaint alleges in detail the exact opposite, backed by myriad sources—including, over a dozen letters and reports from the Federal Reserve, accounts of former SVB employees, reports from investigative journalists, and more. Plainly, Defendants do not merely seek notice of these documents, but rather to persuade the Court to adopt their version of the truth of these documents' contents and determine disputed facts in Defendants' favor.

Yet *defendants may not "present their own version of the facts at the pleading stage"* through documents deemed incorporated by reference or judicially noticed. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also id.* at 1003 (holding that these doctrines cannot be used by "defendants to short-circuit the resolution of a well-pleaded claim"); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031, 1033 (N.D. Cal. 2018) (denying requests for judicial notice because "Defendants repeatedly do what *Khoja* forbids—ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint"). And while some facts that are not subject to reasonable dispute can be judicially noticed, a district court may only take judicial notice of the *existence* of a document—not the truth or meaning of its contents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Defendants trample these concepts, asking the Court to accept as true facts within 49 documents they claim are subject to judicial notice, or deemed incorporated by reference. Defendants' repeated misuse of their Exhibits—cherry picking certain statements and taking others out-of-context in otherwise lengthy reports or letters—only further underscores that the incorporation-by-reference doctrine does not permit Defendants to dispute well-pled allegations.

For these reasons, and as set forth more fully below, the Defendants' Request for Judicial Notice should be denied.

---

[1]     The Securities Act Defendants joined in the Request for Judicial Notice. *See* Request for Judicial Notice at 1, n. 1.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## II.   <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether the Court should take judicial notice and/or incorporate by reference Exhibits 1-49.

## III.   <u>ARGUMENT</u>

**A.   The Ninth Circuit Cautions Against the "Overuse" of the Judicial Notice and Incorporation-By-Reference Doctrines**

As a general rule, courts "may not consider facts outside the complaint when deciding a motion to dismiss without converting it into a summary-judgment motion." *HomeLight, Inc. v. Shkipin*, 2022 WL 16528142, at *1 (N.D. Cal. Oct. 28, 2022). There are, however, two limited exceptions to this rule. Courts may consider facts or documents that are: (i) incorporated by reference (i.e., either referred to "extensively" in a pleading or that "form[] the basis of [a] plaintiff's claim"); or (ii) judicially noticeable under Rule 201(b). *Khoja*, 899 F.3d at 998-99, 1002. The Ninth Circuit recently highlighted "a concerning pattern in securities cases like this one: exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* at 998. Thus, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.*; *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1051 (N.D. Cal. 2018) ("Incorporation by reference and judicial notice are both grossly overused and regularly confused in motions to dismiss.").

It is well-settled that a district court may only take judicial notice of the existence of a document, not the truth or meaning of its contents. *See, e.g.*, *Wasjutin v. Bank of Am., N.A.*, 732 F. App'x 513, 516 n.2 (9th Cir. 2018) ("district court could only have taken judicial notice of the existence and authenticity of the recorded document—not the truth of its contents"); *GOJO Indus., Inc. v. Barough*, 2018 WL 5880829, at *3 (C.D. Cal. Apr. 2, 2018) ("the [c]ourt takes judicial notice only of the *existence* of these documents and not the respective parties' interpretations of their meaning.") (emphasis in original). Judicial notice is also inappropriate where the substance of a document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes." *Khoja*, 899 F.3d at 1000. A request for judicial notice must supply the court "with the necessary information" to rule on the request, including the specific facts within a document that a party would like the court to judicially notice. Fed. R. Evid. 201(c)(2); *see also Mills v. Molina Healthcare, Inc.*, 2022 WL 17825534, at *6 (C.D. Cal. Dec. 8,

2022) ("[J]udicial notice applies to facts, not to exhibits. . . . [T]he Court declines [d]efendants' invitation to sift through dozens of pages of briefing on their motion to dismiss to attempt to determine the scope of each of [d]efendants' requests for judicial notice.").

Under the incorporation-by-reference doctrine, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.[2] And, "[a]lthough the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* at 1003; *see also id.* at 1014 ("[I]ncorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage."); *Angelucci v. Mayorkas*, 2021 WL 4523690, at *3 (S.D. Cal. Oct. 4, 2021) (recognizing the Ninth Circuit's "admonition against resolving factual disputes at the pleading stage" through documents incorporated by reference in the complaint).

**B.  Plaintiffs Object to the Improper Use of Exhibits 1, 2, 32-38, and 48**

**1.  Plaintiffs Object to Defendants' Misuse of Exhibit 1**

<u>**Exhibit 1**</u> is the Federal Reserve's April 28, 2023 report, referred to and accurately quoted in the Complaint. As the Complaint alleges, the Federal Reserve's report specifically concluded that SVB's collapse "'***can be tied directly to the failure of the board of directors and senior management***'" and "'***linked directly to its governance, liquidity, and interest rate risk-management deficiencies***.'" ¶214 (quoting Ex. 1 at 2-3). The report also described critical deficiencies and weaknesses in SVB's controls over risk management, liquidity, and interest rate risk. Specifically, the Federal Reserve concluded that SVB's "'***board and management failed to effectively oversee the risks inherent in [SVB]'s business model and balance sheet strategies***'" and that SVB "'did not take sufficient steps in a timely fashion to build a governance and risk-management framework that kept up with its rapid growth and business model risks.'" ¶215 (quoting Ex. 1 at 2). In addition, the Federal Reserve concluded that SVB "'failed its own

---

[2]    To invoke the incorporation-by-reference doctrine, references to a document in the complaint must be extensive (*Khoja*, 899 F.3d at 907) or form the basis of the claim. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Khoja*, 899 F.3d at 1002. "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

1   internal liquidity stress tests and did not have workable plans to access liquidity in times of stress.'" ¶215

2   (quoting Ex. 1 at (i)). The Federal Reserve further concluded that "'the bank changed its own risk-

3   management assumptions to reduce how [interest rate] risks were measured rather than fully addressing

4   the underlying risks.'" *Id.*

5          Defendants sidestep the Federal Reserve's core conclusions alleged in the Complaint and offer a

6   competing version of the report by cherry-picking snippets out-of-context. For example, contrary to

7   Plaintiffs' allegations, the Exchange Act Defendants contend that the report demonstrates that SVB

8   "actively worked" to address supervisory feedback and that the only "pre-class period" MRIAs/MRAs that

9   remained open related to "cybersecurity." Exchange Act MTD at 4, 22. In truth, the Federal Reserve's

10  report details that SVB "did ***not*** take sufficient steps in a timely fashion to build a governance and risk-

11  management framework that kept up with its rapid growth and business model risks." Ex. 1 at 2; ¶215.

12  Indeed, it specifically confirms that SVB received a remarkable 31 MRAs and MRIAs that ***still*** had not

13  been remediated when the Bank collapsed—"about triple the number observed at peer firms." *Id.* at 6, 27;

14  ¶175. Further, the Federal Reserve confirmed in its report, these 31 open supervisory findings concerned

15  "***core areas, such as governance and risk management, liquidity, interest rate risk management, and***

16  ***technology***." Ex. 1 at 6.

17         Defendants cannot, as they do here, use judicial notice to invite the Court to "resolve competing

18  theories against the complaint," which "risks premature dismissals of plausible claims that may turn out to

19  be valid after discovery." *Khoja*, 899 F.3d at 998. Defendants' counter-factual narrative—i.e., "that the

20  Defendants at all times acted in good faith in the best interests of SVB, its shareholders, and its

21  customers"[3]—is based on cherry-picked snippets of Exhibit 1, ignores the report's core findings, and

22  improperly asks the Court to take notice of the contents of this document for its purported "truth." *See*

23  *Longo v. OSI Sys., Inc.*, 2020 WL 3124221, at *1 (C.D. Cal. Mar. 11, 2020) (documents "cannot be

24  incorporated by reference because they are being used to support a defense to the well-pled allegations in

25  the complaint"); *see also Dfinity USA Rsch. LLC v. Bravick*, 2023 WL 2717252, at *3 (N.D. Cal. Mar. 29,

26

27

28

[3]      Exchange Act MTD at 1.

2023) (declining to incorporate documents by reference because it "would merely create a defense to the [c]omplaint's allegations by disputing the factual allegations").

### 2. Plaintiffs Object to Defendants' Misuse of Exhibit 2

**Exhibit 2** is a California Department of Financial Protection and Innovation ("DFPI") report, dated May 8, 2023. As accurately alleged in the Complaint, the DFPI report states that Defendant Becker told the Federal Reserve in February 2022 that SVB would terminate Laura Izurieta, SVB's then-Chief Risk Officer. Ex. 2 at 40; ¶¶104, 501.

Again ignoring *Khoja*'s proscriptions, Defendants misuse the incorporation-by-reference doctrine to offer a competing version of the facts in the DFPI report. For example, the Exchange Act Defendants claim that the DFPI report shows that SVB "urgently worked to remediate" the feedback provided to it. *See* Exchange Act MTD at 8. But in truth, the DFPI report states—in its first "[k]ey finding"— that "***SVB was slow to remediate regulator-identified deficiencies***." Ex. 2 at 2. The DFPI report further details the supervisory warnings given to the Exchange Act Defendants due to SVB's deficiencies in risk management, liquidity, and interest rate risk controls, including that (i) "SVB's risk management framework did ***not*** address foundational matters, was not comprehensive, and was not commensurate with SVB's size and complexity"; (ii) SVB's "liquidity risk management practices were deemed to be ***below supervisory expectations***"; and (iii) SVB's interest rate risk simulations "were ***not*** reliable and required improvements." Ex. 2 at 33-34, 39.

Defendants' characterizations of Exhibit 2 are not appropriately subject to "incorporation by reference" because "the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Khoja*, 899 F.3d at 1000.

### 3. Plaintiffs Object to Exhibit 32 Because It Was Not Referenced in the Complaint, and Defendants' Misuse Its Contents

**Exhibit 32** is an unsigned March 10, 2023 document titled, "DFPI Order Taking Possession of Property and Business." The unsigned DFPI "order" is nowhere quoted, cited, or referenced in the Complaint and, accordingly, cannot be considered at this stage. *Khoja*, 889 F.3d at 1002-03. Moreover, the Exchange Act Defendants offer their own skewed interpretation of the unsigned "order," which included its "***[u]ltimate [f]indings***" that SVB's "***liquidity position is inadequate***" and that SVB was "***conducting***

1    *its business in an unsafe manner due to its present financial condition.*" Ex. 32 at 1-2. If anything, the

2    unsigned "order" supports the Complaint's detailed allegations regarding the Bank's inability to determine

3    and meet its future liquidity needs (*see* §IV.C.2-4), which forced the Bank to sell its investment securities

4    at "a loss of approximately $1.8 billion" and to "conduct[] a capital raise" on March 8, 2023. Ex. 32 at 1.

5    Defendants misuse and offer their own competing interpretation of Exhibit 32's contents which

6    contravenes the well-settled rule, articulated in *Khoja*, 899 F.3d at 1003, that:

7    > Submitting documents not mentioned in the complaint to create a defense is nothing more
8    > than another way of disputing the factual allegations in the complaint, but with a perverse
9    > added benefit: unless the district court converts the defendant's motion to dismiss into a
     > motion for summary judgment, the plaintiff receives no opportunity to respond to the
10   > defendant's new version of the facts.

11       **4.       Plaintiffs Object to Defendants' Misuse of Exhibit 33**

12       **Exhibit 33** is a DFPI Joint Examination Report, dated May 3, 2021, that describes a safety and

13   soundness inspection jointly conducted by the DFPI and Federal Reserve. As accurately described and

14   quoted in the Complaint, the Joint Examination Report concluded that SVB's liquidity stress tests were

15   ineffective and suffered from material weaknesses, including that "'***liquidity stress test time horizons do***

16   ***not currently provide short term insight into the interim of one to 30 days***.'" ¶¶144, 228(e), 538 (quoting

17   Ex. 33 at 8). As a result, regulators issued two new MRAs regarding SVB's deficient risk management

18   practices. ¶¶228(f), 628; Ex. 33 at 1-3.

19       Defendants cherry-pick different portions of this report to: (i) suggest that regulators approved

20   SVB's overall "[s]ensitivity to market risk" (Exchange Act MTD at 7); and (ii) argue that the Federal

21   Reserve considered their criticisms about SVB's risk models to be "closed" around the time this report was

22   issued (Securities Act MTD at 9). This competing version of events is contradicted by the details in the

23   Complaint, as corroborated by numerous sources, alleging that the same red flags surrounding SVB's

24   deficient liquidity stress tests identified in Exhibit 33 remained ongoing throughout the Class Period. *See,*

25   *e.g.*, ¶228. In fact, just months after the DFPI issued the instant report, the Federal Reserve ***again*** concluded

26   that the Bank's internal liquidity stress testing was erroneously "***based on historical simulation***" alone,

27   and did not include a "***forward-looking assessment of the firm's risk***." Ex. 36 at 4 (Letter from the Federal

28   Reserve, dated November 2, 2021, summarizing results of an August 16-27, 2021 inspection).

Accordingly, Defendants' attempt to use Exhibit 33 to dispute well-pled allegations through the incorporation-by-reference doctrine is improper, and should be rejected. *Khoja*, 899 F.3d at 1003, 1014 ("incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage").

### 5.    Plaintiffs Object to Defendants' Misuse of Exhibit 34

**Exhibit 34** is a Federal Reserve supervisory target letter, dated November 19, 2019, regarding a target inspection of SVB's corporate governance and global risk management activities. The Complaint accurately describes and quotes the Federal Reserve's letter, which criticized SVB for, among other things, its risk management model, including that "'***large model overlay/assumptions***'" were "'***not appropriately identified***.'" ¶¶115, 511 (quoting Ex. 34 at 2). After issuing the target letter, Federal Reserve issued two new MRAs to SVB "'***to reflect the remaining work needed to address the underlying supervisory concerns***.'" *Id.*

Ignoring these core conclusions, the Securities Act Defendants offer a competing reading of the letter, claiming that the deficiencies it identified did not implicate "operational criticism," and cherry-picking a snippet from the letter to argue that that the Federal Reserve determined that SVB followed a "well-defined governance process." *See* Securities Act MTD at 9. Yet, far from endorsing SVB's governance process, the Federal Reserve determined that "***the board and senior management may not have a sufficient view/perspective into aggregate residual risk exposures***," and that "***concerns remain about certain aspects of the structure, independence, and functional expertise within the risk-management framework***." Ex. 34 at 2, 4. Similarly, the Federal Reserve warned SVB that the Bank's modeling governance lacked a "'***transparent and repeatable process for setting capital limits and buffers***,'" and that such a failure created the risk that SVB's "'***board and senior management may rely on stress testing results that do not accurately reflect the risk appetite***.'" ¶¶228(d), 511 (quoting Ex. 34 at 2).

Accordingly, Defendants' use of Exhibit 34 to prop-up an alternative narrative of sufficient risk controls—while simultaneously ignoring other warnings from the same regulators over its risk management models—is improper and should be rejected. *Longo*, 2020 WL 3124221, at *1 (not permitting incorporation doctrine to support defenses to complaint's allegations).

6.      **Plaintiffs Object to Defendants' Misuse of Exhibit 35**

**Exhibit 35** is the Federal Reserve's July 9, 2021 full scope report, which assessed SVB's overall risk management and consolidated financial condition. The Complaint accurately alleges that the Federal Reserve's report identified deficiencies in SVB's internal controls, including that its "'first line of defense'"—the design and implementation of the Bank's risk controls—was "'***insufficient***,'" its "'controls programs'" were "'***inconsistent***,'" and its risk management framework "'***lack[ed] needed traction***'" and "'***remain[ed] ineffective***.'" ¶¶70, 74, 228(h), 466, 605 (quoting Ex. 35 at 4).

In contrast, Defendants pick phrases out-of-context to support a counterfactual narrative that SVB was "fundamentally sound" (Securities Act MTD at 8) and its liquidity position was "strong" (Exchange Act MTD at 7). The Securities Act Defendants further claim that the timing of the report "sheds no light on when the referenced issues emerged" in relation to the February, March and May 2021 Offerings. Securities Act MTD at 8.

But as pled in the Complaint, the contents and findings of the report support the opposite conclusion. To begin, the report concerns "[f]inancial [d]ata as of: December 31, 2020"—i.e., right before the start of the Class Period—and states that the inspection occurred during April 2021, therefore implicating the February, March, and May 2021 Offerings. Ex. 35 at 1; ¶¶228(g), 629. Next, the Securities Act Defendants ignore the report's core conclusion that SVB's internal controls were downgraded due to "***weaknesses evidenced by significant operational and technology risk governance shortcomings, insufficient lending and credit risk monitoring controls, and a stagnant independent credit review function***." Ex. 35 at 2, 3. The report further noted the risks created by SVB's "***weaknesses in risk management practices or financial condition***" could "***develop into conditions of greater concern***" if left un-remediated, and that "***the [SVB] board is expected to provide necessary resources and oversight to ensure management expeditiously remediates noted [internal controls and risk monitoring] weaknesses***." *Id.* at 2.

Defendants, therefore, should not be permitted to use this Exhibit pursuant to the incorporation-by-reference doctrine as a tool "to short-circuit the resolution of a well-pleaded claim" by offering their own competing narrative of the document's contents. *Khoja*, 899 F.3d at 1003.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

### 7.      Plaintiffs Object to Defendants' Misuse of Exhibit 36

**Exhibit 36** is a Federal Reserve supervisory letter to SVB dated November 2, 2021, summarizing the results of a target examination of SVB's liquidity risk management practices. The findings of this inspection, as accurately referenced and quoted in the Complaint, flagged SVB's deficient liquidity and liquidity risk management practices, including the existence of "'***foundational shortcomings in three key areas***'" and that it lacked "'***key elements***'" necessary for SVB's "'***longer term financial resiliency***.'" ¶¶135, 228(i) (quoting Ex. 36 at 1-3); *see also* ¶¶136, 139-41, 144-45, 529. The letter also described the issuance of two MRIAs and four MRAs to the Exchange Act Defendants. ¶¶228(j), 530; Ex. 36 at 2-6.

Defendants offer their own interpretation of this supervisory letter in an effort to challenge its significance and diminish its clear negative implications. For example, the Securities Act Defendants erroneously claim that the liquidity findings "do[] not support" a connection to the Complaint's allegations regarding SVB's unreliable interest rate risk models. Securities Act MTD at 9. In truth, the supervisory letter specifically identified that SVB's internal liquidity stress testing does "not adequately address ***both market and idiosyncratic risks***"—which includes by its very nature interest rate risk scenarios, a fact Defendants' misleading characterization dodges. ¶¶144, 539; Ex. 36 at 1. Moreover, the letter further notified SVB that the Federal Reserve had identified "***several weaknesses in the firm's [internal liquidity stress test] approach***" including that (i) "***[k]ey assumptions rely on incomparable peer benchmarks***" and (ii) the stress testing did not target "***the more immediate impact of a liquidity stress***," all of which required new stress test design scenarios to address the same "***market- and idiosyncratic-based risks***" referenced above. Ex. 36 at 4. Finally, the Federal Reserve's letter criticized SVB's contingency funding plan, including, among things, that it failed to account for the Bank's funding needs "***during a stress event***." Ex. 36 at 5.

Defendants should not be permitted to offer their own narrative about the contents of this Exhibit in an attempt to contradict the Complaint's well pled allegations regarding SVB's deficient liquidity stress testing and controls. *See Crowder v. LinkedIn Corp.*, 2024 WL 1221956, at *7 (N.D. Cal. Mar. 21, 2024) (refusing to apply incorporation doctrine where documents "contradict the allegations in the [complaint]").

1

### 8.   Plaintiffs Object to Defendants' Misuse of Exhibit 37

**Exhibit 37** is the Federal Reserve's August 17, 2022 supervisory ratings letter, which detailed SVB's assessment results and ratings as a Large Financial Institution ("LFI"). The Complaint accurately alleges and quotes the Federal Reserve's conclusions, including that "'***material financial weaknesses in practices or capabilities***' *presented a* '"***significant risk***"' *and threatened* "'[***S***VB's] *prospects for remaining safe and sound*.'" ¶¶70, 136, 194, 196, 277 (quoting Ex. 37 at 2). The letter also informed Defendants that the Federal Reserve was initiating an enforcement action "'***designed to hold [the Bank's] board and executive management accountable for addressing the root cause deficiencies contributing to ineffective governance and risk management***.'" ¶¶14, 71, 118, 137 (quoting Ex. 37 at 3).

The Exchange Act Defendants ignore these core findings—along with the report's identification of the numerous deficiencies impacting the safety and soundness of the Bank—to derive a competing narrative that this letter "praised SVB's effective interest rate risk management." *See* Exchange Act MTD at 22. Defendants' narrative cannot be reconciled with the Federal Reserve's findings, including that SVB continued to have the same "*[k]ey liquidity risk management deficiencies*" as identified in the November 2, 2021 letter (Ex. 36), and that SVB's risk management framework was "***not comprehensive, does not incorporate coverage for all risk categories, and does not address foundational enterprise level risk management matters***." Ex. 37 at 2, 4; ¶¶195-96.

As such, Defendants use of this Exhibit "only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint" is improper and should be rejected. *Khoja*, 899 F.3d at 1014.

### 9.   Plaintiffs Object to Defendants' Misuse of Exhibit 38

**Exhibit 38** is a Federal Reserve supervisory letter, dated November 15, 2022, regarding the results of the Federal Reserve's 2022 CAMELS examination. As the Complaint accurately describes, the Federal Reserve identified a number of significant issues during this examination, including that SVB's interest rate risk simulations and models were "'***not reliable***'" and "'***directionally inconsistent***'" with SVB's financial performance. ¶¶119-20, 173 (quoting Ex. 38 at 1). Based on these findings, the Federal Reserve issued an MRA instructing SVB to address the "*[u]nreliable [interest rate risk] modeling*" that "***call[] into question . . . the effectiveness of risk management practices***." Ex. 38 at 1, 4; ¶228(q).

Ignoring the core findings of this letter, the Exchange Act Defendants claim that it was the only MRA issued during the Class Period for "interest rate risk" and was "not a more urgent MRIA." *See* Exchange Act MTD at 9. In truth, throughout 2022, regulators flagged issues with SVB's interest rate risk management framework (*see* ¶¶119-21), including in the instant supervisory letter that further concluded "*[u]nreliable [interest rate risk] modeling directly impairs management and the board's ability to make sound asset liability management decisions*" and that the "*[interest rate risk] simulation results gave a false sense of safety in a rising rate environment and masked the need to take actions earlier in the rate cycle*." Ex. 38 at 1, 4.

Accordingly, Defendants' improper use of Exhibit 38's contents to dispute the Complaint's well-pled allegations concerning interest rate risk should be rejected. *Khoja*, 899 F.3d at 1003, 1014.

### 10. Plaintiffs Object to Exhibit 48 Because It Was Not Referenced in the Complaint and Defendants Improperly Use It

**Exhibit 48** is the Federal Reserve's revised Supervision and Regulation Report, dated November 10, 2022, publicly describing its overall supervisory and regulatory policies and actions. This document is nowhere quoted, cited, or referenced in the Complaint and, accordingly, cannot be considered under the incorporation-by-reference doctrine. *Khoja*, 889 F.3d at 1003.

Moreover, Defendants offer their own skewed meaning of Exhibit 48—which, if anything, *undermines* Defendants' attempts to minimize the significance of MRIAs and MRAs, as well as the Federal Reserve's downgrade of SVB to "Less-than-Satisfactory-3." *See* Exchange Act MTD at 4-5. Contrary to Defendants' suggestion otherwise, the report makes clear that SVB's "LFI rating" was a critical tool used by the Federal Reserve to assess whether SVB "possesses sufficient financial and operational strength and resilience to maintain safe-and-sound operations and comply with laws and regulations" Ex. 48 at 24. And, as noted in the report, MRAs and MRIAs "are used to identify and communicate areas where banks do not meet supervisory expectations." *Id.* at 26. Moreover, by at least November 2022, the report publicly identified "higher credit and interest rate risks" as an increased economic risk for LFIs, and highlighted the importance of "firm-specific" stress tests to ensure sufficient "rigor" in market stress scenarios. *Id.* at 21, 26. The report further described the Federal Reserve's supervisory priorities for LFI's, including: (i) interest rate risk; (ii) risk management practices in market and interest rate risk; (iii)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

asset/liability management and stress testing; and (iv) firm remediation efforts on previously identified MRAs, all of which were the very same deficiencies that SVB suffered from throughout the Class Period. *Id.* at 28; *see, e.g.*, ¶228.

Accordingly, the Court should only take judicial notice of the existence of Exhibit 48 and not the truth or meaning of its contents. *Khoja*, 899 F.3d at 1000 ("It is improper to judicially notice a [document] when the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes.").

## C. Plaintiffs Object to the Improper Use of Exhibits 39-41 ("News Articles")

**Exhibit 39** is *The Financial Times* article dated February 21, 2023. The Complaint quotes from this article, including where Defendant Becker claimed less than a month before the Bank's collapse, that SVB had "'ample liquidity to support lots of scenarios that may get worse and worse.'" ¶307 (quoting Ex. 39 at 8). The Exchange Act Defendants seek to incorporate this article to challenge Plaintiffs' allegations about SVB's misclassification of HTM securities, but fail to identify ***any specific facts*** within the article to support their factual contention. *See* Exchange Act MTD at 18 n.12, 19. Therefore, Defendants have not provided the Court "with the necessary information" to rule on the request. Fed. R. Evid. 201(c)(2); *see also Mills*, 2022 WL 17825534, at *6. Further, Defendants' improper attempt to use Exhibit 39 to dispute well-pled allegations should be rejected. *See Khoja*, 899 F.3d at 1014.

**Exhibits 40 and 41** are news articles from *The Financial Times* and *The Washington Post* issued after SVB's collapse respectively entitled "Silicon Valley Bank was warned by BlackRock that risk controls were weak," and "Silicon Valley Bank's risk model flashed red. So its executives changed it." As the Complaint accurately describes, both articles set forth findings and accounts provided by former SVB employees and BlackRock Inc. *The Financial Times* reported that BlackRock, which was SVB's third-party consultant, specifically told SVB's executives by no later than January 2022 that SVB "'***lagged behind similar banks on 11 of 11 factors considered and was 'substantially below' them on 10 out of 11***.'" ¶212 (quoting Ex. 40 at 2). In addition, *The Washington Post*'s report, which was supported by former SVB employee accounts, explained how in the face of the potential impact of higher interest rates on SVB's liquidity, rather than adjust SVB's business practices, SVB's executives "'***simply changed the [interest rate risk] model's assumptions***.'" ¶¶213, 244 (quoting Ex. 41 at 1).

The Exchange Act Defendants argue that the Court should discount these articles because they are based on "unnamed" sources. Exchange Act MTD at 17. But in making this argument, the Exchange Act Defendants ignore that these articles **do**, in fact, describe these former employees, including that they had "direct knowledge" of the risk control issues at SVB (Ex. 40 at 1) and were "familiar with the [interest rate risk] modeling" (Ex. 41 at 1)—and corroborated the Federal Reserve's contemporaneous interest rate risk modeling findings, just as the Complaint alleges. ¶¶237, 244.

Accordingly, the Court should reject Defendants' improper attempt to incorporate Exhibits 40 and 41 to dispute well-pled allegations. *See Khoja*, 899 F.3d at 1003, 1014.

### D.     The Court Should Not Judicially Notice or Incorporate-By-Reference Disputed Facts in SEC Filings

Defendants further seek: (i) judicial notice and incorporation by reference of Form 10-Ks, 10-Qs, 8-Ks, and 4s, Proxy Statements, Earnings Call and presentation transcripts (Exhibits 3-31); and (ii) judicial notice of Form 8-Ks and "excerpts" of a registration statement and prospectus (Exhibits 43-47 and 49). Plaintiffs do not contest that some of these filings were referred to and form the basis of Plaintiffs' claims. Plaintiffs also do not object to these documents' authenticity or that they were publicly available.

However, the accuracy of these disclosures are disputed in this case and the Court should not accept their "truth" to determine any disputed facts. As courts have explained in rejecting similar tactics, statements contained in defendants' SEC filings should not be accepted as "true," particularly "in a securities fraud action—since the truth of the contents of the SEC reports is typically central to the dispute." *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (quoting the plaintiffs' argument, with approval); *see also Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *In re Zoom Sec. Litig.*, 2022 WL 484974, at *4 n.1 (N.D. Cal. Feb. 16, 2022) (Donato, J.) (granting incorporation by reference for certain uncontested documents but ruling that "the Court does not take judicial notice of any disputed facts"); *Karri v. Oclaro, Inc.*, 2020 WL 5982097, at *4 (N.D. Cal. Oct. 8, 2020) (Donato, J.) (considering documents filed with the SEC, but declining to "take judicial notice of any disputed facts").

Regarding the Exchange Act Defendants' use of the purported stock sales data in the Form 4s (Exs. 21-31) and Proxy Statements (Exs. 14-16), while the disclosure of defendants' stock purchases and sales on Forms 4 may be appropriately judicially noticed, the truth of the content and inferences drawn therefrom cannot be. *See Morris v. Smith Micro Software, Inc.*, 2012 WL 12948541, at *3 (C.D. Cal. May 21, 2012) (declining "to judicially notice the truth of the contents of SEC filings, including the dates and volume of stock purchases listed in SEC Form 4s . . . judicial notice should not be taken of the truth of their contents"); *Maiman*, 2010 WL 11421950, at *7 (similar); *see also Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1025 n.3 (N.D. Ill. 2010) (stating that courts in the Seventh Circuit, even when they have taken judicial notice of SEC filings such as Form 4s, have not done so to "establish[] the truth of the matter in question").

Here, contrary to these principles, the Exchange Act Defendants improperly cite extensive data within these documents to dispute whether their stock sales are suspicious and whether their incentive packages support scienter. But such factual disputes relying on purported data and documents outside the four corners of the Complaint are not appropriate at the pleading stage. *See In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at *8 (C.D. Cal. Mar. 25, 2019) (improper for defendants to seek to use judicial notice "to have this Court rely on these documents to adopt defendants' version of facts at the pleading stage"); *Hodges v. Akeena Solar, Inc.*, 2010 WL 3705345, at *6 (N.D. Cal. May 20, 2010) (non-culpable explanations better left for "summary judgment").[4] Accordingly, even if the Court judicially notices these Exhibits, it should not accept any "purported" facts that are subject to reasonable dispute.

---

[4] The Exchange Act Defendants' reliance on *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018) (Request for Judicial Notice at 5), is misplaced, as that case does not contradict the fundamental principle that documents subject to judicial notice cannot be used to decide disputed facts in Defendants' favor. Rather, a closer inspection of *Azar*—and the cases it relies on—shows that the district court was focused on determining only whether the Form 4's reflect that the defendants' sales were broadly made pursuant to a Rule 10b5-1 plan, 2018 WL 6182756, at *4, as opposed to Defendants' efforts here to use the underlying data and information to craft factual arguments and affirmative defenses that these trades are not suspicious—all of which is improper at this stage. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (courts "may not, on the basis of evidence outside of the [c]omplaint, take judicial notice of facts favorable to [d]efendants that could reasonably be disputed").

**E.     Defendants' Improper Application and Overuse of Judicial Notice Justifies Their Motions' Denial**

Defendants' Motions rely heavily on cherry-picked quotes, taken out of context to support their homespun counter-factual narrative. Where, as here, a motion to dismiss reflects "[t]he overuse and improper application of judicial notice," *Khoja*, 899 F.3d at 998, and the incorporation-by-reference doctrine, the Court may and should simply reject the Motions. In two recent cases, that is exactly what occurred under similar circumstances. *See DalPoggetto v. Wirecard*, 2020 WL 2374948, at *1 (C.D. Cal. Apr. 15, 2020) (denying motion without prejudice for referencing materials outside the pleading); *Longo*, 2020 WL 3124221, at *1 (same). In both *DalPoggetto* and *Longo*, the court ordered either an answer or a re-filed motion without reference to or attachment of any exhibits. *DalPoggetto*, 2020 WL 2374948, at *2; *Longo*, 2020 WL 3124221, at *3.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Request for Judicial Notice. If the Court is inclined to grant the Request for Judicial Notice, Plaintiffs respectfully request that the Court not take judicial notice of disputed facts or treat as incorporated-by-reference the disputed facts and inferences that Defendants ask the Court to draw from their Exhibits.

Dated: May 3, 2024                                        Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**                **KESSLER TOPAZ**
  **& GROSSMANN LLP**                                     **MELTZER & CHECK, LLP**

*/s/ Salvatore J. Graziano*                              */s/ Sharan Nirmul*
Salvatore J. Graziano (appearance *pro hac vice*)        Sharan Nirmul (appearance *pro hac vice*)[5]
(salvatore@blbglaw.com)                                  (snirmul@ktmc.com)
1251 Avenue of the Americas                              280 King of Prussia Road
New York, NY 10020                                       Radnor, PA 19087
Telephone: (212) 554-1400                                Telephone: (610) 667-7706
Facsimile: (212) 554-1444                                Facsimile: (610) 667-7056

-and-                                                    -and-

---

[5]     In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiffs Norges Bank and Sjunde AP-Fonden and Additional Plaintiffs Asbestos Workers Philadelphia Welfare and Pension Fund, and Heat & Frost Insulators Local 12 Funds and the Proposed Class*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE