1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="text-align:center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| IN RE SVB FINANCIAL GROUP SECURITIES LITIGATION | Case No. 23-cv-01097-NW |
| | **ORDER DENYING EXCHANGE DEFENDANTS', KPMG, AND SECURITIES DEFENDANTS' MOTIONS TO DISMISS** |
| | Re: ECF Nos. 121, 122, 123, 124, 125 |

This is a putative class action for securities fraud against former officers, directors, underwriters, and an auditor of Silicon Valley Bank Financial Group ("SVBFG"), the parent company of Silicon Valley Bank ("SVB" or the "Bank") (collectively, "Defendants"). Lead Plaintiffs Norges Bank and Sjunde AP-Fonden filed a Consolidated Amended Complaint ("CAC") alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"). CAC, ECF No. 88.

Different configurations of defendants filed three motions to dismiss. Defendants to the Exchange Act counts, SVB CEO Gregory W. Becker and CFO Daniel J. Beck ("Exchange Act Defendants"), filed a motion specifically challenging those counts. ECF Nos. 121 ("Exch. Defs MTD"), 138 ("Exch. Defs Reply"). KPMG, SVB's outside auditor, filed a motion to dismiss the single count against them under the Securities Act. ECF Nos. 123 ("KPMG MTD"), 139 ("KPMG Reply"). Because the Exchange Act Defendants were also subject to Securities Act counts, Becker and Beck joined fellow executive Karen Hon (collectively the "Executive Defendants"), the Underwriters Defendants,[1] and the Director Defendants[2] in their motion to

---

[1] The following Defendants were underwriters to one or more of the Offerings: Goldman Sachs & Co. LLC ("Goldman"); BofA Securities, Inc. ("BofA"); Keefe, Bruyette & Woods, Inc. ("Keefe"); and Morgan Stanley & Co. LLC ("Morgan Stanley") (collectively, the "Underwriter Defendants"). CAC ¶ 380.

[2] The following SVB directors (the "Director Defendants") were each a signatory of the Registration Statement, and/or a director at the time of an Offering: Eric Benhamou, Elizabeth

<div style="writing-mode:vertical-rl; text-align:center">United States District Court<br>Northern District of California</div>

dismiss the Securities Act claims.  ECF Nos. 125 ("Secs. Defs MTD"); 140 ("Secs. Defs Reply").
Plaintiffs opposed the motions.  ECF Nos. 134 ("Exch. Opp."), 135 ("KPMG Opp."), and 136
("Secs. Opp.").  For the reasons discussed below, the Court DENIES all three motions.

## I.    BACKGROUND

Plaintiffs' Complaint is divided into two independent parts and is based on two,
independent sets of claims.  *See generally* CAC.  In Part One, Plaintiffs assert claims under
Exchange Act Sections 10(b), 20(a), and 20A against Becker and Beck.  *Id.*  ¶ 1.  Plaintiffs bring
the Exchange Act claims "individually and on behalf of all persons and entities who purchased or
otherwise acquired the common stock of Silicon Valley Bank Financial Group between January
21, 2021, and March 10, 2023, inclusive (the "Class Period")."  *Id.*  In Part Two, Plaintiffs assert
claims under the Securities Act Sections 11, 12(a)(2) and 15 against former SVB executives,
directors, underwriters, and KPMG.  *Id.* ¶ 19.  Plaintiffs bring the Securities Act claims
individually and on behalf of the persons and entities who purchased SVB securities in, or
traceable to, one or more of the Bank's eleven securities offerings (the "Offerings" or an
"Offering") during the Class Period.  *Id.*  Each Offering was completed pursuant to a registration
statement filed by SVBFG, on November 15, 2019 (the "Registration Statement") , as well as
pursuant to prospectus supplements issued for each Offering (the "Prospectus Supplement,"
together with the Registration Statement, the "Offering Documents").

The breakdown of all Plaintiffs' claims is shown in the table below.

|  | Exchange Act | | | Securities Act | | |
|---|---|---|---|---|---|---|
|  | § 10(b) | § 20(a) | § 20A | § 11 | § 12(a)(2) | § 15 |
| Gregory W. Becker | Count I | Count II | Count III | Count IV |  | Count VI |
| Daniel J. Beck | Count I | Count II | Count III | Count IV |  | Count VI |
| Karen Hon |  |  |  | Count IV |  | Count VI |
| Underwriter Defendants |  |  |  | Count IV | Count V |  |
| Director Defendants |  |  |  | Count IV |  | Count VI |
| KPMG LLP |  |  |  | Count IV |  |  |

Burr, John Clendening, Richard Daniels, Alison Davis, Roger Dunbar, Joel Friedman, Jeffrey
Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate Mitchell, and Garen Staglin.  CAC
¶¶ 391-403.

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.    Facts**

**1.    The Failure of SVB**

In its report following SVB's collapse, the Federal Reserve ("the Fed") described SVBFG as:

> a large bank holding company with approximately $212 billion in total assets when it failed in March 2023. SVBFG provided financial services predominantly to companies in the technology and life sciences sectors. Between 2019 and 2021, SVBFG tripled in size as it benefited from rapid deposit inflows during rapid venture capital (VC) and technology sector growth in a period of exceptionally low interest rates. These deposits were largely uninsured, and SVBFG invested them primarily in securities with longer-term maturities. In 2022, as interest rates began to rise, SVBFG saw deposit outflows and a rapid increase in unrealized losses on those securities.

Exch. Defs RJN, Ex. 1, ECF No. 122-1 ("Fed Report") at 3. The Report explains that "as the risks to the firm's balance sheet mounted, SVBFG" attempted to correct course on March 8, 2023, by "restructure[ing] its balance sheet" (*id.* at 4) and making the following announcements:

> **First**, SVB disclosed that the Bank was forced to sell "substantially all of its available for sale securities portfolio" for a nearly $2 billion dollar loss. **Second**, SVB disclosed that, even after the fire-sale of its entire AFS portfolio, the Bank's liquidity shortcomings had become so severe as a result of rising interest rates that it needed to raise another approximately $2.25 billion through various stock offerings. SVB also admitted that, even with the capital raise, there would be a "payback period of approximately three years" to make up for this loss. **Third**, SVB disclosed that it was lowering its net interest income guidance for both the first quarter of 2023 and the full year.

CAC ¶ 202 (emphasis in original). Following this news, the price of SVB common stock declined more than 60% in a single day. *Id.* ¶ 204. As one analyst explained, "SVB—which for months has been adamant that it wouldn't significantly restructure its balance sheet—stunned investors Wednesday when it said it would issue $2.25 billion of shares and booked a $1.8 billion loss on the sale of a large part of its available-for-sale securities." *Id.* (quoting *Bloomberg*, "SVB Is in Sale Talks After Capital Raising Failed, CNBC Says" (March 10, 2023), https://www.bloomberg.com/news/articles/2023-03-10/svb-in-talks-to-sell-itself-after-capital-raise-fails-cnbc-says.). SVB's customers reacted accordingly "to these disclosures . . . and began to rapidly withdraw their deposits." *Id.* ¶ 205. "In total, depositors attempted to withdraw more than **$40 billion** from their accounts at SVB on March 9, 2023." *Id.* (emphasis in original).

3

SVB's demise quickly followed.  *Id.* ¶ 206.  On March 10, 2023, the NASDAQ exchange suspended trading in SVB stock; the California Department of Financial Protection and Innovation closed down the Bank and appointed the Federal Deposit Insurance Corporation as receiver.  *Id.* On March 17, 2023, SVB filed for Chapter 11 bankruptcy protection, rendering all its issued securities essentially valueless.  *Id.* ¶ 210.

### 2.    Defendants' Alleged False Representations and Omissions

The principal issue in this case is whether the Defendants made materially false representations or omissions about SVB that induced Plaintiffs to buy securities in the Bank. Plaintiffs allege that, given SVB's business as a lender and its concentration of uninsured deposits, the market was "acutely focused on SVB's ability to manage its expanding risks."  Exch. Opp. at 3.  Consequently, any misrepresentations as to the health of SVB's balance sheet and internal controls would and did mislead investors.  *See* Secs. Opp. at 4.  The misrepresentations had outsize effect because "SVB had just experienced unprecedented growth that increased the Bank's risk exposure and required enhanced risk management capabilities." *Id.* (citing CAC ¶¶ 502-07).

As a general matter, the alleged misstatements and omissions at issue in this case can be distilled into eight categories, *i.e.*, statements related to: (i) risk controls and their effectiveness (*id.* ¶¶ 276-84, 463-507); (ii) risk models and their effectiveness (*id.* ¶¶ 285-88, 508-12); (iii) interest rate risk controls and their effectiveness (*id.* ¶¶ 289-94, 513-26); (iv) purported benefits to SVB from rising interest rates (*id.* ¶¶ 295-301)[3]; (v) liquidity controls and their effectiveness (*id.* ¶¶ 302-308, 527-50); (vi) held-to-maturity securities (*id.* ¶¶ 309-16, 551-70); (vii) internal controls over financial reporting and their effectiveness (*id.* ¶¶ 317-27, 444-52), and (viii) omissions of material information required by regulation S-K (*id.* ¶¶ 571-73).[4]  *See generally* CAC Exs. 1 and 2.[5]

---

[3] As alleged, only the Exchange Act Defendants made misstatements related to purported benefits to SVB from rising interest rates.

[4] As alleged, only the Securities Act Defendants omitted material information required under regulation S-K.  17 C.F.R. §§ 229.303, 229.305.

[5] The Court ordered Plaintiffs to set out its securities fraud allegations in chart form.  ECF No. 82 at 5.  Plaintiffs filed two charts alongside the CAC: Exhibit 1, the Exchange Act Misstatements

United States District Court
Northern District of California

(i)      **Risk Controls**.  Plaintiffs allege that SVB lacked the risk management controls it had explicitly and publicly touted.  According to Plaintiffs, these statements were false because: (1) each of SVB's "three lines of defense" was ineffective, as was its board of directors; (2) SVB failed to incorporate appropriate risk appetite metrics and set risk limits; (3) SVB lacked adequate resources, personnel, and leadership for its risk management function, including an effective chief risk officer; and (4) SVB failed to maintain risk management controls consistent with its growth and size. *See Id.* ¶¶ 72-112, 466-507.

(ii)      **Risk Models**.  Plaintiffs allege that SVB's risk model suffered from critical weaknesses exacerbated by the Bank's failure to effectively monitor the majority of the models it used.  As the Fed communicated to the Bank, SVB's models lacked a "transparent and repeatable process for setting capital limits and buffers," which created the risk that SVB's "board and senior management may rely on stress testing results that do not accurately reflect the risk appetite." *See id.* ¶¶ 113-16, 508-12.

(iii)      **Interest Rate Controls**.  Plaintiffs allege that SVB suffered from weaknesses in its interest rate risk management.  Specifically, Plaintiffs contend that the models used by Becker and Beck for SVB's interest rate risk management were unreliable and ineffective.  Third party consultant BlackRock Inc. told SVB executives that "SVB was unable to generate real time or even weekly updates about what was happening to its securities portfolio" and the response of its portfolio to "rising interest rates and broader macroeconomic conditions." *See id.* ¶ 129; *id.* ¶¶ 117-32, 513-26.

(iv)      **Purported Benefits of Rising Interest Rates.**  Plaintiffs allege that the Exchange Act Defendants misrepresented to investors that SVB would benefit from rising interest rates without disclosing that SVB lacked the controls necessary to determine how SVB's portfolio would respond to increased interest rates.  SVB's interest rate models were overly simplistic, missing essential information, and generally unreliable. *See id.* ¶¶ 244-47.

---

Summary Chart, and Exhibit 2, the Securities Act Misstatements Summary Chart.  *See generally* CAC.  The Court "deem[s] [the charts] to be a part of the complaint."  ECF No. 82 at 5.

United States District Court
Northern District of California

(v)    **Liquidity Management.**  Plaintiffs allege that SVB suffered from material financial weaknesses when it came to liquidity risk.  Among other things: (1) SVB purportedly lacked an adequate liquidity limits framework; (2) the bank's internal liquidity stress testing suffered from material financial weaknesses; (3) its contingency funding plan suffered from material financial weaknesses; and (4) SVB suffered from material financial weaknesses in its controls for liquidity risk management.  *See id.* ¶¶ 133-55, 527-50.

(vi)    **"Held-to-Maturity" Securities.**  Plaintiffs allege that SVB misclassified tens of billions of dollars in investment debt securities as HTM ("Held-to-Maturity") in violation of GAAP ("Generally Accepted Accounting Principles"), masking the increasingly troubling financial health of the Bank.  *See id.* ¶¶ 156-74, 551-70.

(vii)    **Internal Controls.**  Plaintiffs point to regulator feedback as contemporaneous evidence of SVB's deficient feedback.  The Fed issued Matters Requiring Attention ("MRA") and Matters Requiring Immediate Attention ("MRIA") to the bank that the SVB failed to remedy.  *Id.* ¶¶ 175-84.

(viii)    **Material Omissions Under S-K.**  As a result of the above misstatements, Plaintiffs allege that the Bank's Annual Reports and Quarterly Reports violated the requirements of Item 303 of Regulation S-K (17 C.F.R. § 229.303).  The regulation required SVB to disclose "material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition," including "any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way."  *Id.* ¶ 453.

During the Class Period, though unbeknownst to investors, the Fed had been warning SVB of its myriad deficiencies (and the threats they posed) in a series of private communications sent directly to Defendants Becker and Beck, as well as to SVB's Board.  Exch. Opp. at 3.  Among other things, these communications indicated that: (i) the Bank's risk management framework was "not effective" and "missing several elements of a sound . . . risk management program" (*id.* ¶¶ 70, 110); (ii) the Bank's interest rate models were "directionally inconsistent" with SVB's

financial performance and, thus, "not reliable" (*id.* ¶¶ 12, 119, 227, 228(p)); and (iii) the Bank's liquidity risk management practices lacked "key elements" necessary for SVB's "longer term financial resiliency" (*id.* ¶¶ 10-11, 135, 139, 211, 228(i)).  SVB's continued refusal to remedy its deficiencies reached a fever pitch when the Fed privately told Defendants it would institute an enforcement action "to hold [SVB's] board and executive management accountable for addressing the root cause deficiencies contributing to ineffective governance and risk management." *Id.* ¶¶ 14, 71, 137, 181, 231.  Nevertheless, despite the mounting evidence of the Bank's deficiencies, Defendants misled investors by representing that SVB had robust risk management, interest rate and liquidity risk controls, and a strong balance sheet.

### 3.    Allegations Related to KPMG (Securities Act Claim, Count IV)

KPMG was SVB's registered auditing firm from 1994 until the Bank collapsed.  *Id.* ¶ 404. KPMG issued unqualified audit reports in connection with SVB's Annual Reports filed on Forms 10-K for the years-ending December 31, 2020, and December 31, 2021 (filed March 1, 2021, and March 1, 2022, respectively), and consented to the incorporation-by-reference of those reports into the Offering Documents.  *Id.*

Plaintiffs allege that KPMG issued clean audit reports for SVB including specifically that: (i) "the consolidated financial statements" issued by SVB "present[ed] fairly, in all material respects, the financial condition" of the Bank in accordance with GAAP; (ii) SVB "maintained, in all material respects, effective internal control over financial reporting" as of year-end; (iii) KPMG conducted its "audits in accordance with the standards of the PCAOB," the Public Company Accounting Oversight Board; and (iv) KPMG disclosed each Critical Audit Matter as required by PCAOB standards.  *Id.* ¶ 457.  According to Plaintiffs, these statements were materially false, misleading, and omitted material facts because SVB suffered from significant and ongoing deficiencies in internal controls concerning the Bank's liquidity, interest rate risk, and ability to hold its HTM securities to maturity.  *Id.* ¶ 458.

United States District Court
Northern District of California

### B.    Procedural Posture

In the two months following SVB's collapse, five groups of shareholder Plaintiffs brought suits in this Court against SVB's stakeholders.[6]  Consolidation Order, ECF No. 82.  On November 30, 2023, the cases were consolidated into the instant action because they "allege substantially similar claims under the Exchange Act and Securities Act against common defendants, across overlapping class periods, and concerning the same conduct."  *Id.*  Lead Plaintiffs Norges Bank and Sjunde AP-Fonden filed the amended, operative complaint on January 16, 2024.  *See generally* CAC.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) and Rule 8(a)(2)

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is facially plausible.  Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Typically, the "complaint need only satisfy the 'minimal notice pleading requirements' of Rule 8(a)(2)."  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

When considering a motion to dismiss, the court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  Likewise, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true.  *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022).

---

[6] *Vanipenta v. SVB Financial Group*, Case No. 23-cv-01097 (filed March 13, 2023), *Snook v. SVB Financial Group*, Case No. 3:23-cv-01173 (filed March 15, 2023), *Siddiqui v. Becker*, Case No. 23-cv-1228 (filed March 17, 2025), *Hialeh Employees v. Becker*, Case No. 23-cv-01697 (filed April 7, 2023), *International Union of Operating Engineers v. SVB*, Case No. 23-cv-01962 (filed April 24, 2023).

**B.      Rule 9(b)**

"Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Claims sounding in fraud or mistake, however, are subject to heightened pleading requirements of Rule 9(b), which require that a plaintiff claiming fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  To decide whether a complaint sounds in fraud, a court must "determine, after a close examination of the language and structure of the complaint, whether the complaint alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009).

The parties dispute whether this heightened pleading standard also applies to the Securities Act Claims.  Secs. Defs MTD at 10; Secs. Opp. at 8.  The Ninth Circuit has explained that Securities Act claims sound in fraud where "a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b)." *Id.*  On the one hand, where the plaintiffs "disclaim any allegations of fraud [and] . . . . have made an effort to plead a non-fraudulent basis for Section 11 liability . . . . Plaintiffs' claims under Section 11 are not subject to Fed. R. Civ. P. 9(b)'s particularity requirements." *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005).  On the other hand, this does not apply if the "gravamen of the complaint is fraud." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) ("[A] plaintiff's nominal efforts to disclaim allegations of fraud with respect to its section 11 claims are unconvincing where the gravamen of the complaint is fraud").

At this juncture, the Court takes no position on whether Plaintiffs' Securities Act claims sound in fraud because it is enough for the Plaintiffs' allegations to meet (as the Court finds) both the Rule 8 and Rule 9(b) standard, for the CAC to survive a motion to dismiss.  In a securities fraud action, a pleading meets the requirements of Rule 9(b) "if it identifies the circumstances of

United States District Court
Northern District of California

the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). A plaintiff alleging a fraudulent statement must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994).

### C.    Private Securities Litigation Reform Act

Violations under the Exchange Act must meet " 'the exacting pleading requirements' . . . of the Private Securities Litigation Reform Act ("PSLRA")." *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)). The PSLRA requires that complaints alleging falsity "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (quoting 15 U.S.C. § 78u-4(b)(1)). *See* CAC at Exs. 1-2. As to scienter, the PSLRA requires a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007); *Rubke*, 551 F.3d at 1164.[7]

In the Ninth Circuit, a "strong inference" of scienter requires deliberate recklessness or conscious misconduct, and deliberate recklessness itself means "some degree of intentional or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974, 979 (9th Cir. 1999), as amended (Aug. 4, 1999); *see also S.E.C. v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003) (defining recklessness as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which

---

[7] Though plaintiff must also plead falsity with particularity, the Ninth Circuit "treat[s] the falsity and scienter analyses as 'a single inquiry, because falsity and scienter are generally inferred from the same set of facts.'" *Fodor v. Blakey*, No. CV 11-08496 MMM (RZx), 2012 WL 12893985, at *9 (C.D. Cal. Feb. 21, 2012) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).

United States District Court
Northern District of California

presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

In *Tellabs,* the Supreme Court directed lower courts to consider the allegations in the aggregate; the question "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.*, 551 U.S. at 322–23 (emphasis in original). That said, "the court must take into account plausible opposing inferences." *Id.* at 323. As one court explained,

> [t]his includes both "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324. However, "[t]he inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* But the inference of scienter must be more than merely "reasonable" or "permissible" – "it must be cogent and compelling." *Id.* A complaint survives "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

*River Canyon Total Return Bond Fund v. Credit Suisse Sec. USA LLC*, No. CV 24-3993-GW-EX, 2024 WL 4867562, at *4–5 (C.D. Cal. Sept. 17, 2024) (quoting *Tellabs*, 551 U.S. 308).

## III.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Becker and Beck submit 49 documents as judicially noticeable facts, documents incorporated into the CAC by reference, or documents properly considered under the PSLRA. *See* Exch. Act Defs' RJN, ECF No. 122. KPMG likewise asks the Court to consider eight documents as incorporated by reference or judicially noticeable. KPMG RJN, ECF No. 124. The Plaintiffs oppose, arguing that Defendants' requests attempt to establish their alternative version of facts in a summary judgment-style evidentiary attack. ECF Nos. 133, 136.

Generally, a district court may not consider material outside the pleadings when considering a Rule 12(b)(6) motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Otherwise, the motion is converted into one for summary judgment. *See* Fed. R. Civ. P. 12(d). There are two relevant exceptions to this rule: "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

Although "mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (citation and quotations omitted). The Ninth Circuit thoroughly considered this doctrine in *Khoja*, writing that it "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Although a court may assume the contents of an incorporated document are true for the purposes of a motion to dismiss (unlike judicial notice), "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *See id.* at 1003 (citations omitted); *see also Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 870–71 (N.D. Cal. 2023).

A court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Turning first to Exchange Act Defendants' RJN, the Court finds Exhibits 1-42 incorporated by reference. As demonstrated by Defendants, Exhibits 1-42 are directly quoted or cited in the CAC and thus properly incorporated by reference. *See* ECF No. 122 at 3-5. Exhibits 43-47 and 49 are documents filed with the SEC, and the Court can and does take judicial notice of such filings. *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (on motion to dismiss, courts may consider "any matter subject to judicial notice, such as SEC filings"); *see also In re Intel Corp. Sec. Litig.*, No. 18-CV-00507-YGR, 2019 WL 1427660, at *7 (N.D. Cal. Mar. 29, 2019) ("SEC filings are routinely subject to judicial notice."). The remaining document, Exhibit 48, however, is not subject to judicial notice nor incorporated by reference—Defendants attempt to use it to challenge the significance of the number of MRA and MRIAs the Fed issued to SVB—and the Court accordingly will not consider it.

1   KPMG's RJN asks the Court to consider Exhibits A-H.  ECF No. 124.  Exhibits A-F are

2   more complete versions of documents the Court found were incorporated by reference pursuant to

3   the Exchange Act Defendant's RJN.  *Compare* ECF No. 122 (Exs. 3, 4, 33, 36, 37, and 1) *with*

4   ECF No. 124 (Exs. A-F).  Accordingly, the Court judicially notices Exhibits A-F.  Exhibits G and

5   H, however, are records from the Financial Accounting Standards Board that KPMG argues are

6   subject to judicial notice.  The Court disagrees—KPMG appears to rely upon Exhibits G and H to

7   create a dispute about the propriety of SVB's accounting for certain securities as held-to-maturity.

8   KPMG MTD at 2.  The Court will not judicially notice those documents.

9   **IV.   DISCUSSION**

10      In deciding a motion to dismiss, the Court accepts Plaintiffs' well-pleaded factual

11   allegations as true.  *Tellabs*, 551 U.S. at 322 (emphasis added) ("[F]aced with a Rule 12(b)(6)

12   motion to dismiss . . . courts must, as with any motion to dismiss for failure to plead a claim on

13   which relief can be granted, accept ***all factual allegations*** in the complaint as true.").

14   Nevertheless, Defendants collectively spend more than a dozen pages of briefing attempting to

15   challenge those allegations.  *See* Exch. Defs MTD at 2-10; Secs. Defs MTD at 4-10; KPMG MTD

16   at 3-6.  A motion to dismiss is not the appropriate vehicle to dispute the facts alleged in a

17   complaint, and the Court does not consider those challenges here.  In this Order, the Court—as it

18   must—only considers those arguments that go to whether, ***as alleged***, the CAC sufficiently states

19   a claim upon which relief can be granted.

20      Though the claims here are significant, they are not complex.  Below, the Court explains

21   the relevant standards and applies the law by defendant group.  For the purposes of this Order, the

22   Court assumes any element in any claim that Defendants do not contest to be conceded for

23   purposes of these motions.

24      In the following discussion, the Court references the Defendants' Statements as found in

25   Exhibit 1, the Exchange Act Misstatements Summary Chart, and Exhibit 2, the Securities Act

26   Misstatements Summary Chart, to the CAC.  *See infra* n.5.

27

28

United States District Court
Northern District of California

**A.    Sections 10(b), 20(a), and 20A of the Exchange Act**

Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  SEC Rule 10b-5 implements Section 10(b) by declaring it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  "Thus, to prevail on a claim for violations of either Section 10(b) or Rule 10b–5, a plaintiff must prove six elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.,* 552 U.S. 148, 157 (2008)).  While "[p]ure omissions are not actionable under Rule 10b–5(b)," the statute "requires disclosure of information necessary to ensure *that statements already made* are clear and complete," making "half-truths, not pure omissions" actionable.  *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 260, 263 (2024) (emphasis added).

"Claims under Sections 20(a) and 20A of the Exchange Act are derivative 'and therefore require an independent violation of the Exchange Act,' so the shareholders must successfully plead a Section 10(b) claim to succeed on their claims under Sections 20(a) and 20A."  *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 947 (9th Cir. 2023) (quoting *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007)).  A Section 20(a) claim imposes liability on certain "controlling" individuals for violations of Section 10(b) and its underlying regulations.  15 U.S.C. § 78t(a).  *Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Section 20A provides that "[a]ny person who . . . sell[s] a security while in possession of material, nonpublic information

United States District Court
Northern District of California

shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the . . . sale of securities that is the subject of such violation, has purchased . . . securities of the same class." 15 U.S.C. § 78t-1(a) (emphasis added).  .

Plaintiffs allege the Exchange Defendants made 25 misstatements in violation of Section 10(b).  *See* CAC, Ex. 1, Statement Nos. 1-25.  In response, Defendants contend Plaintiffs failed to meet three of the six elements required by Section 10(b): falsity, scienter, and loss causation.  As a result, the Exchange Defendants argue that Plaintiffs' Section 10(b) claim must fail, which then negates their Section 20(a) and 20A claims.

### 1.    Falsity

"Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008.  In determining whether a statement is misleading, the court applies the objective standard of a "reasonable investor." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021).  "[O]nly if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law." *Fecht*, 70 F.3d at 1081 (internal quotation marks, citations, and alteration omitted).

The falsity analysis is slightly different when the challenged statements contain opinions. A statement of opinion, even if literally accurate, may be rendered misleading by the omission of a material fact.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186–87 (2015); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (applying *Omnicare* to Section 10(b) and Rule 10b-5 claims).  "A statement of opinion is not misleading just because external facts show the opinion to be incorrect" or the "issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 188–89.  However, a reasonable investor expects that the issuer's opinion "fairly aligns with the information in the issuer's possession at the time." *Id.* at 189.  To state a claim that an opinion is false or misleading, the investor must identify particular material facts regarding the basis for the issuer's opinion, the omission of which make the statement "misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194.

When defendants "tout positive information to the market," they must "do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705–06 (9th Cir. 2016). Additionally, the context in which statements are made also plays a crucial role. *See Veal v. LendingClub Corporation* (holding statements that might otherwise be considered puffery to be actionable if made repeatedly to reassure the investing public about the company's integrity). The evidence cited in Plaintiffs' CAC, including Plaintiffs' former employee testimony, provides sufficient factual support for Plaintiffs' allegations of falsity.

Defendants challenge the falsity of each of the 25 Statements on at least one ground, and sometimes more than one. *See generally* Exch. Defs MTD. Below, the Court considers the four general arguments Defendants advance as to why the Statements are not false, namely that the statements (1) are forward looking, (2) are non-actionable opinions, (3) are mere puffery, and (4) do not materially misrepresent SVB's conditions. *Id.* Because the Statements do not sequentially fall into those groupings (which the Court likewise uses to structure its analysis into four sections), the Court provides the table below to summarize which arguments attach to which Statement. All Statements are discussed in some fashion below.

| Challenge | Statement No. | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| Forward Looking | X | X | | | | X | X | | | | X | X | X | X | X | | X | X | | | | | | | |
| Opinion | | | X | X | X | | | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | | | |
| Puffery | X | X | X | X | X | X | X | | X | X | | | | | | X | X | X | | | | | | | |
| No Mat. Misrep. | | | | | | | | | | | | | | | | | | | X | X | X | X | X | X | X |

### a.    Alleged Statements are Not Forward Looking

Defendants contend that Statement Nos. 1, 2, 6, 7, 11-15, 17, and 18 are immunized by the PSLRA's safe harbor for forward looking statements. The Court disagrees.

Forward-looking statements may be subject to the safe harbor, which exempts from liability a statement that (1) is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to

*United States District Court*
*Northern District of California*

differ materially from those in the forward-looking statement," *or* (2) is not "made with actual knowledge . . . that the statement was false or misleading." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (quoting 15 U.S.C. § 78u-5(c)(1)).  To take advantage of the first safe harbor, however, the cautionary language must "relate directly to that to which plaintiffs claim to have been misled." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1415 (9th Cir. 1994).  And where "plaintiff has sufficiently alleged that the cautionary language itself was misleading . . . its inclusion [does] not activate the PSLRA's 'safe harbor' protection." *In re Origin Materials, Inc. Sec. Litig.*, 766 F. Supp. 3d 998, 1015 n.6 (E.D. Cal. 2025).  As the Ninth Circuit has explained, "[r]isk disclosures that 'speak entirely of as-yet-unrealized risks and contingencies' and do not 'alert the reader that some of these risks may already have come to fruition' can mislead reasonable investors."  *Id.* at 1016-17 (quoting *Alphabet*, 1 F.4th at 703).

As alleged, Statement Nos. 1, 2, 6, 7, 11-15, 17, and 18 exhibit that exact pitfall.  Within those statements, Defendants indicated that various risks were mere speculation when, as alleged, Defendants knew those risks had been realized from their own analyses and communications with the Fed.  *See, e.g.*, CAC, Ex. 1, Statement No. 2 (Defendants stated that SVB "could suffer unexpected losses and become subject to regulatory consequences" "[if] our risk management framework is not effective.  Citing to CAC § IV.C.1, Plaintiffs adequately contend that Defendants' statements were misleading because "SVB's risk management was ***already*** 'not effective' and SVB was ***already*** subject to 'regulatory consequences.'").

### b.    Alleged Statements are Not Non-Actionable Opinions

Defendants argue that Statement Nos. 3-5, 8-15, and 17-22 are nonactionable opinions.  As to Statements Nos. 3-5 and 8-10, the Court agrees with Plaintiffs that each alleged misstatement "state[s] with certitude fundamental aspects of SVB's risk controls, and thus are not opinions at all."  Likewise, Statement Nos. 19-22 discuss whether SVB's financial statements were compiled in accordance with GAAP, which was objectively verifiable.  Secs. Opp. at 19.

As to Statement Nos. 17-18, Plaintiffs concede that those misstatements can be considered opinions, but they allege that the statements "misled investors about *then-existing facts* concerning

SVB's current liquidity and current ability to assess risk." *Id.* at 15. There are "three different standards for pleading falsity of opinion statements" in the Ninth Circuit. *Align*, 856 F.3d at 615.

> First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue. Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that "the supporting fact [the speaker] supplied [is] untrue." Third, when a plaintiff relies on a theory of omission, the plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

*Id.* at 615-16 (9th Cir. 2017) (alterations in original) (internal citations omitted) (quoting *Omnicare*, 575 U.S. at 185-186). While this is a closer call, the Court agrees with Plaintiffs that the opinion statements turn on an issue of material fact—namely, whether SVB's liquidity risk management and monitoring process" was actually "designed to ensure appropriate liquidity," and further, whether SVB even had the "ample liquidity" as Exchange Defendants represented. Statement Nos. 17-18.

Accordingly, the Court will not dismiss Statement Nos. 3-5, 8-15, and 17-22 as nonactionable opinions.

### c.    Alleged Statements are Not Puffery

Defendants' insistence that Statement Nos. 1-7, 9-10, 16-18 are mere puffery is likewise unavailing. Secs. Defs MTD at 13-15; Secs. Opp. 14. "Puffery" is not actionable under the PSLRA because the law deems such statements so amorphous as to be immaterial. *See In re Omnivision*, 937 F. Supp. 2d at 1102. However, determining whether a given statement is material "entail[s] delicate, fact-intensive assessments that are more properly left to the jury." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012). Thus, "[i]n deeming a statement puffery at the motion to dismiss stage, courts must exercise great caution." *Id.*; *see also In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1028 (N.D. Ill. 2004) (declining to hold that statements were puffery at the motion to dismiss stage because materiality involves "delicate assessments of the inferences a reasonable shareholder would draw"). Accordingly, to dismiss claims on the ground that the statements are

United States District Court
Northern District of California

"puffery," the Court must conclude that the statement is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (citation omitted); *see also In re Sci.-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1360 (N.D. Ga. 2002), *aff'd sub nom. Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004) ("A statement can be dismissed as puffery as a matter of law only if it is immaterial because it is so exaggerated or so vague that a reasonable investor would not rely on it in considering the 'total mix' of facts available."). The Court does not reach such a conclusion. For example, the Court is skeptical that Defendants' statements regarding the efficacy of its monitoring programs were unimportant to a reasonable investor. *See* CAC, Ex. 1, Statement 17. Accordingly, the Court will not dismiss Statement Nos. 1-7, 9-10, 16-18 on the basis of puffery.

### d.    Alleged Statements Materially Misrepresent SVB's Conditions

Finally, Defendants argue that Statements Nos. 19-25 are not actionable because they are not false or misleading. Because the Court "must take all of the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, at the motion to dismiss stage the Court cannot consider arguments going to the truth of Plaintiffs' allegations.

Statement Nos. 19-22 concern SVB's intention and ability to hold securities classified as HTM. *See* CAC, Ex. 1. Plaintiffs allege that the HTM classification allowed SVB to "avoid reporting any declines in the [securities'] fair value" within their financial reports. CAC ¶ 552. Defendants respond that, because the Bank disclosed the fair market and the HTM values in the same table, Defendants could not possibly have misled investors. Exch. Defs MTD at 19. The Court disagrees. Plaintiffs' contest the HTM classification because, in labelling the securities "HTM", SVB signaled that it had the intention and ability to hold those securities to maturity, as their name indicates. Because Plaintiffs claim that Defendants knew they lacked such an ability, Plaintiffs successfully allege that the Exchange Defendants misled investors by using the HTM classification. *See* KPMG Opp. at 6 ("[I]n classifying the securities as HTM . . . the financial statements affirmatively represented that the "fair value ***did not matter*** to SVB's GAAP accounting, and thus changes in the fair value ***did not matter*** for SVB's balance sheet and reported

financial metrics."); *see also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (A statement is false or misleading if it "directly contradicts what the defendant knew at the time or omits material information.") (cleaned up).

Defendants' contention that the Statements are opinions subject to the *Omnicare* standard is likewise unavailing. Exch. Defs MTD at 19. Not one of Defendants' Statements at issue includes qualifying language that indicates the HTM classification was something other than a fact. *See e.g.*, CAC, Ex. 1, Statement 20 (reporting certain securities as "HTM investment securities" and recording those holdings accordingly at amortized cost). Defendants do not state or imply that the securities could be held to maturity *in their opinion*, only that the securities were designated as HTM, full stop. *Id.*

Statement Nos. 23-25 concern Defendants' certifications under the Sarbanes-Oxley Act of 2002 ("SOX"). CAC, Ex. 1. Plaintiffs argue that Defendants materially misrepresented the overall health and wellbeing of SVB when Exchange Defendants certified that the Bank had effective "disclosure controls and procedures" and "internal control over financial reporting," *Id.* ¶¶ 317-19. Defendants' main argument against this charge is that, because the Fed contemporaneously classified the Bank's SOX program as "effectively managed," Plaintiffs could not and did not adequately allege that the SOX classifications were materially false. Exch. Defs MTD at 20. The strictures of Rule 12(b)(6) do not allow the Court to "dismiss a complaint unless it appears beyond a doubt that the claimant can prove no set of facts to support the claim that would entitle the claimant to relief." *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999). Pointing to a single, specific finding from the Fed does not make Plaintiffs' task impossible when the CAC contains dozens of contrary allegations. *See, e.g.*, CAC ¶ 321 ("[T]he Exchange Act Defendants received a steady stream of adverse supervisory findings, MRIAs and MRAs, and other warnings from the Federal Reserve that demonstrated to SVB that its internal controls were, in fact, ineffective."). The Court will not dismiss the CAC on those grounds.

### 2.    Scienter

As discussed above, under the PSLRA, plaintiffs must plead "with particularity facts giving rise to a *strong inference*" that the Defendants acted with scienter when making the alleged

false statements.  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).  "A strong inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014).  For a 10(b) violation, the inference must be that the "'defendant[ ] made false or misleading statements either *intentionally* or with *deliberate recklessness*.'"  *Id.* (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (emphasis in original)).  In practice, this means plaintiffs must plead that "the defendants knew specific facts at the time that rendered their [statements] fraudulent."  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1011 (N.D. Cal. 2008).

The Court finds that Plaintiffs sufficiently allege scienter.  Defendants had contemporaneous knowledge of information that contradicted the representations Defendants made to their investors.  Among other things, Plaintiffs allege: that Defendants received regulator feedback ***during the Class Period*** that directly conflicted with representations to investors, Secs. Opp. at 21-25, *see, e.g.*, CAC ¶ 228(f)-(r) (list of letters from Federal Reserve sent during the Class Period); that Defendants had discussions with former employees and consultants that guaranteed Defendants were aware of the falsehoods within their representations, Secs. Opp. at 25-27; *see, e.g.*, CAC ¶¶ 102, 176-81 (FE 2, SVB's Former Head of Risk Governance, discussed SVB's deficient risk management controls with Becker and Beck directly)[8]; and that Defendants had financial motivation to conceal the adverse information that they ultimately withheld, Secs. Opp. at 28-30, *see, e.g.*, CAC ¶¶ 263-266 ("Defendants Becker and Beck capitalized on SVB's artificially inflated stock price by offloading their personally-held SVB shares for more than $35 million during the Class Period.").  The Court assumes, as it must, the truth of these allegations

---

[8] "To rely on statements of [a Former Employee] to plead scienter, the allegations 'must pass two hurdles': (1) the sources 'must be described with sufficient particularity to establish their reliability and personal knowledge'; and (2) the reported statements 'must themselves be indicative of scienter.'"  *Sakkal v. Anaplan Inc.*, 557 F.Supp.3d 988, 998–99 (N.D. Cal. 2021) (quoting *Zucco Partners*, 552 F.3d at 995).  "[A]ll that is required is sufficient detail to establish that a witness has personal knowledge about the facts that they reported.  *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2024 WL 2059121, at *9 (N.D. Cal. May 7, 2024).  Plaintiffs meet this standard with allegations of scienter pulled from more than a dozen former SVB employees who previously worked in risk management and/or accounting.

1    that Defendants intentionally made false statements, or made these statement with deliberate

2    recklessness as to their veracity.

3        For scienter, Courts may also consider "the totality of circumstances" and "need not close

4    their eyes to circumstances that are probative of scienter viewed with a practical and common-

5    sense perspective." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *Zucco*

6    *Partners*, 552 F.3d at 991 (quoting *Tellabs*, 551 U.S. 322-23) (requiring courts to consider "*all* of

7    the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any

8    individual allegation, scrutinized in isolation, meets that standard."). Under this lens, too, the

9    CAC's allegations of scienter satisfy both Rule 9(b)'s particularity requirement as well as the

10    PSLRA's strong inference standard. *See Leventhal v. Chegg, Inc*., 721 F. Supp. 3d 1003, 1017

11    (N.D. Cal. 2024), *reconsideration denied*, No. 21-CV-09953-PCP, 2024 WL 3447516 (N.D. Cal.

12    July 17, 2024).

13                            **3.    Loss Causation**

14        "[L]oss causation is a 'context-dependent' inquiry as there are an 'infinite variety' of ways

15    for a tort to cause a loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (internal

16    citation omitted). "Because loss causation is simply a variant of proximate cause, the ultimate

17    issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused

18    the plaintiff's loss." *Id.* (citation omitted). A complaint sufficiently alleges loss causation when it

19    contains "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of

20    loss causation." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (citation and

21    internal quotation marks omitted). "[S]o long as the plaintiff alleges facts to support a theory that

22    is not facially implausible, the court's skepticism is best reserved for later stages of the

23    proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Id.* at 1057.

24        As set forth in *In re Facebook*, while Plaintiffs are not required to prove loss causation at

25    the motion to dismiss stage, they must (1) allege a "significant" drop in price, and (2) allege with

26    particularity facts plausibly suggesting that the fraud caused the stock drop, as opposed to some

27    other fact. 87 F.4th at 954. With SVB's billions of dollars in losses, Plaintiffs meet this standard

28    easily.

### 4.    Sections 20(a) and 20A

Defendants sole challenge to the 20(a) and 20A counts concerns the failure to prove a primary violation of Section 10(b).  *See* Exch. Defs MTD at 34-35.  Given the Court's finding above, these counts likewise survive the motion to dismiss.

### B.    Sections 11, 12(a)(2), and 15 of the Securities Act

### 1.    Securities Act Defendants

Section 11 of the Securities Act, 15 U.S.C. § 77k, "provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013); 15 U.S.C. § 77k(a). Section 12 imposes civil liability on any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading."  15 U.S.C. § 77l(a)(2).  "Sections 11 and 12(a)(2) are 'Securities Act siblings' with similar elements."  *In re Velti PLC Sec. Litig.*, No. 13-cv-03889-WHO, 2015 WL 5736589, at *31 (N.D. Cal. Oct. 1, 2015) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).

To state a claim against a control person[9] under Section 15 of the Securities Act, Plaintiffs must (1) plausibly allege an underlying violation of Section 11 or 12, and (2) control.  *See* 15 U.S.C. § 77o; *In re Rigel Pharm., Inc. Sec. Lit.*, 697 F.3d 869, 886 (9th Cir. 2012) ("Section 20(a) and section 15 both require underlying primary violations of the securities laws." (citing 15 U.S.C. §§ 77o, 78t(a)); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) ("[A] controlling person analysis" for Section 15 is the same as for Section 20(a)).  Plaintiffs must therefore allege (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator.  *Howard*, 228 F.3d at 1065.

---

[9] A "control person" is any "person who, directly or indirectly, controls any person liable under any provision" or regulation of the Exchange Act.  15 U.S.C. § 78t(a).  A control person is "jointly and severally [liable] with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  *Id.*

United States District Court
Northern District of California

As with Section 10(b) of the Exchange Act, Sections 11 and 12 of the Securities Act "require a plaintiff adequately to allege a material misrepresentation or omission." *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation, internal quotation marks, and alteration omitted). Notably, because the Securities Act is more "limited in scope" than the Exchange Act, the Securities Act requires no showing of scienter. *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1123 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Employees' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) ("No scienter is required for liability under § 11 or § 12(a)(2); defendants may be liable for innocent or negligent material misstatements or omissions.")

The Securities Act Defendants present four reasons why Plaintiffs claims must fail: (1) the statements were not false at the time they were made; (2) the statements included sufficient warnings; (3) no reasonable investor would rely on statements concerning risk management; and (4) as to the HTM statements, those statements were accurate under appropriate accounting standards. Secs. Defs MTD at 2-3.

### a.    Securities Statement Nos. 1-12 and 14-16

Defendants' arguments regarding Securities Statement Nos. 1-12 and 14-16 overlap entirely with the arguments asserted under the Exchange Act. *See* CAC Exs. 1 and 2; *infra* § IV.A. The Court's findings there apply equally to these Section 11 statements; accordingly, the Court denies Defendants' motion to dismiss on those same grounds.

### b.    Securities Statement No. 13 (HTM Classification)

Statement No. 13 relates to SVB's reclassification of securities to "Held-to-Maturity"; in certain Offering Documents, SVB represented that the "decision to re-designate the securities was based on our ability and intent to hold these securities to maturity. Factors used in assessing the ability to hold these securities to maturity were future liquidity needs and sources of funding." CAC ¶¶ 313, 442. Plaintiffs contend that the statement was materially false and misleading because "SVB could not—and did not—reliably establish under GAAP the requisite 'ability and intent to hold to maturity' the securities re-classified as HTM, nor could SVB reliably 'assess[] . . . future liquidity needs and sources of funding.'" CAC Ex. 1, Statement No. 13.

United States District Court
Northern District of California

24

Defendants' quibble about the meaning of "reliably" versus "intent," but have no answer to Plaintiffs allegation that Defendants represented that they had the ability to hold the specific securities to maturity when Defendants knew they did not have sufficient liquidity to do so. Defendants' remaining arguments parse facts (for example, whether, SVB could have held the securities to maturity), which are improper arguments at the motion to dismiss stage. *See Tellabs*, 551 U.S. at 322 ([C]ourts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.").

### c.    Securities Statement Nos. 17-18 (Regulation S-K)

Any omission of facts required to be stated under Regulation S-K "produce[s] liability under Section 11." *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1296 (9th Cir. 1998); *Sundaram v. Freshworks Inc*., No. 22-CV-06750-CRB, 2023 WL 6390622 (N.D. Cal. Sept. 28, 2023) (observing that after *Steckman*, "courts treat a violation of Items 303 . . . as a violation of Section 11"); *see also Correa v. Liberty Oilfield Servs., Inc.*, 548 F. Supp. 3d 1069, 1082-83 (D. Colo. 2021) (Item 303 omissions actionable because industry trend statements were the "result of the material omissions about the present, not the future"). Plaintiffs have sufficiently alleged a failure to comply with Items 303 and 305.

To state a Section 11 claim based on Item 303, Plaintiffs must allege: the existence of a trend or uncertainty, known to management, that is reasonably likely to have a material effect on the registrant's financial condition. *Sundaram*, 2023 WL 6390622, at *7 (citing 17 C.F.R § 229.303). Item 303 requires disclosure of "any unusual or infrequent events or transactions or any significant economic changes" affecting reported income and "any known trends or uncertainties" that have had or are likely to have a material impact on net sales or revenues or income. *Id.* § 229.303(b)(2)(i)–(ii). Similarly, Item 305 requires "[q]uantitative and qualitative disclosures about market risk," including "[t]he registrant's primary market risk exposures"; "[h]ow those exposures are managed"; and "[c]hanges in either the registrant's primary market risk exposures or how those exposures are managed." 17 C.F.R. § 229.305.

Defendants are correct that they need not "disclose every last detail (or defect) in their risk management and internal control processes," Secs. Defs MTD at 21. But "half-truths" are

United States District Court
Northern District of California

actionable when Defendants "state[d] the truth only so far as it goes, while omitting critical qualifying information." *Macquarie Infrastructure Corp.*, 601 U.S. at 263.  In reporting certain known risks but not others, Defendants left "reasonable investor[s]" with the "impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal quotation omitted).

Defendants' repeated insistence that they were prohibited from disclosing "the content of the letters [SVB] received from the Regulators" has no bearing on whether their disclosures included misstatements.  Secs. Defs MTD at 21.  Though Defendants could not disclose confidential communications with the Fed, they were required to disclose SVB's significant control weaknesses—which (as alleged) independently existed and were merely corroborated by the Fed's findings.  Secs. Opp. at 24.  Defendants' argument also ignores the corroborating allegations made by former SVB employees.  *See, e.g.*, ¶¶ 525-26.

### d.    Section 15

The Court finds that Plaintiffs have pleaded a primary violation of Section 11.  The Court also finds that Plaintiffs have stated a claim under Section 15 because Plaintiffs adequately alleged that the Securities Act Defendants were "controlling persons of SVB within the meaning of Section 15 of the Securities Act."  CAC ¶ 721.

### 2.    KPMG

Under Section 11, accountants are liable for errors in "any part of the registration statement" that they "prepared or certified." 15 U.S.C. § 77k(a)(4).  KPMG contends that the alleged misrepresentations Offering Documents are "decidedly statements of opinion—not fact," and asks the Court to consider them under the *Omnicare* standard.  KPMG MTD at 7.  Plaintiffs nominally disagree but spend most of their opposition insisting that KPMG's statements are actionable under Section 11 even if they are opinions.  *See* KPMG Opp. at 4 ("[P]leading KPMG subjectively 'did not hold the belief [it] professed' is just one of 'three different standards for pleading the falsity of opinion statements.'" (quoting *Align*, 856 F.3d at 615-16)).

At issue for KPMG is Statement No. 19.  CAC, Ex. 1.  Plaintiffs allege that Statement No. 19 omitted material facts by falsely stating: (i) SVB's financial statements "present[ed] fairly, in

all material respects, the financial position of the Company" in accordance with GAAP; (ii) SVB "maintained, in all material respects, effective internal control over financial reporting"; (iii) KPMG conducted its audit "in accordance with the standards of the PCAOB"; and (iv) KPMG properly disclosed each Critical Audit Matter as required by PCAOB standards despite failing to include any discussion of the accounting for HTM securities.  CAC ¶¶ 586, 590, 593, 596

Though there is no consensus among courts as to whether auditor statements are fact or opinion, the Court finds that the weight of recent authority indicates that *Omnicare* applies here.[10] As discussed above, *Omnicare* established three standards for pleading falsity for opinion statements: (1) a theory of material misrepresentation (*i.e.*, the speaker did not hold the belief professed and the belief was objectively untrue), (2) a theory that a statement of fact contained within an opinion statement is materially misleading (*i.e.*, the opinion contained "embedded statements of fact" that are false); and (3) a theory of omission (*i.e.*, plaintiff must allege facts showing that the company knew undisclosed information that seriously undermined the basis for its opinion).  *Align*, 856 F.3d at 615-16.

KPMG argues that the CAC fails under each of the three *Omnicare* theories.  The Court agrees as to the first two theories, but finds that Plaintiffs have sufficiently alleged (under the third theory) omissions that "call into question [KPMG]'s basis for offering the opinion." *Align*, 856 F.3d at 616 (quoting *Omnicare*, 575 U.S. at 194).  As *Omnicare* explains, a reasonable investor "understands a statement of opinion in its full context, and" creates liability where the speaker

---

[10] Whether auditor statements in offering documents are opinions under the PSLRA is an open question, but several recent decisions have applied *Omnicare*.  *See Hunt v. Bloom Energy Corp.*, No. 19-2935-HSG, 2021 WL 4461171, at *14 (N.D. Cal. Sept. 29, 2021) ("It thus matters under *Omnicare* that PwC's audit report and statements in the Registration Statement were explicitly identified as opinions."); *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."); *see also Buttonwood Tree Value Partners, LP v. Sweeney*, No. 10-00537-CJC (MLGx), 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (finding "both GAAS and GAAP are a collection of broad standards that are couched in rather general and in some cases inherently subjective terms . . . to which reasonable professionals planning or conducting an audit reasonably and frequently could disagree."); *In re Hertz Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) (confirming that statements regarding auditing compliance are opinions).

United States District Court
Northern District of California

1  omits "material facts that cannot be squared with such a fair reading." *Omnicare*, 575 U.S. at 190-

2  91.

3        Though proceeding under the omission theory is "no small task for an investor," *id.* at 194,

4  Plaintiffs succeed on this theory at this motion to dismiss stage.  Plaintiffs do more than simply

5  "allege[] that an opinion was wrong, " *id.*, because they allege that KPMG was well aware of

6  SVB's deficiencies but gave them a clean audit anyway, and did so mere days before SVB

7  collapsed losing billions of dollars in value.

8        According to the CAC, "KPMG had continuous access to and knowledge of the Bank's

9  confidential internal, corporate, financial, operating, and business information, and had the

10  opportunity to observe and review the Bank's business and accounting practices, and to test the

11  Company's internal accounting information and publicly reported financial statements as well as

12  the Bank's internal controls and structures." *Id.* ¶ 489.   KPMG knew, "among other things, [that]

13  the Bank did not have the ability to reliably and appropriately determine whether it could, in fact,

14  hold the [HTM] securities to maturity, as required by GAAP" and PCAOB, meaning KPMG was

15  without any "reasonable basis for its unqualified audit" opinions. *Id.* ¶ 589.  In short, KPMG's

16  audits were not conducted in accordance with GAAP or PCAOB despite certifying otherwise. *Id.*

17  ¶¶ 586-89, 593 ("[H]ad KPMG complied with PCAOB standards, it would have determined that

18  there was no reasonable basis for its unqualified audit reports."); *see also In re Lehman Bros. Sec.*

19  *& Erisa Litig.*, 131 F. Supp. 3d 241, 259 (S.D.N.Y. 2015) ("The logic of *Omnicare* indicates that

20  an auditor, like any other speaker, may not omit matter from its opinions on a company's financial

21  statements and its compliance with [accounting standards] that would render those opinions

22  materially misleading to an informed reader.").

23        For these same reasons, KPMG's statement that SVB "maintained, in all material respects,

24  effective internal control over financial reporting as of [year-end]" omitted material facts related to

25  SVB's internal controls, facts that as alleged were known to KPMG yet entirely undisclosed. *Id.* ¶

26  590-92; *id.* ¶ 459 ("Contrary to KPMG's representations, SVB suffered from significant and

27  ongoing deficiencies in internal controls concerning the Bank's liquidity, interest rate risk, and

28  ability to hold its HTM securities to maturity.").

Because, as alleged, Plaintiffs' omissions theory of liability "call[s] into question the issuer's basis for offering the opinion," *Omnicare*, U.S. 575 U.S. at 194, KPMG's motion to dismiss is DENIED.

## V.    CONCLUSION

The Court DENIES the motions to dismiss submitted by the Exchange Act Defendants, ECF No. 121, KPMG, ECF. No. 123, and the Executive, Underwriter and Director Defendants, ECF No. 125. Defendants shall file an answer to the operative complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: June 13, 2025

Noël Wise
United States District Judge