UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SVB FINANCIAL GROUP SECURITIES LITIGATION | Case No. 23-cv-01097-NW |

**ORDER GRANTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT; DENYING KPMG'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART SEALING MOTIONS**

Re: ECF Nos. 319, 320, 331, 341

Before the Court are Plaintiffs' motion to amend the consolidated amended complaint ("CAC"), ECF No. 319, KPMG's motion to dismiss the proposed second amended complaint ("SAC"), ECF No. 331, and related sealing motions, ECF Nos. 320, 341. The Court held a hearing on the motions on July 29, 2026. For the reasons stated on the record and supplemented below, Plaintiffs' motion is GRANTED, KPMG's motion is DENIED, and the motions to seal are GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.

## I. BACKGROUND[1]

### A. Prior History

The Court assumes familiarity with the complicated factual and procedural history of this action. Briefly, this is a putative class action for securities fraud against former officers, directors, underwriters, and the auditor of Silicon Valley Bank Financial Group ("SVBFG"), the parent company of Silicon Valley Bank ("SVB" or the "Bank") (collectively, "Defendants"). In March

---

[1] This Order references documents and portions of the briefing that were filed under seal at Defendants' request. None of the materials discussed in this Order satisfy the "compelling reasons" standard that applies in these circumstances, not least because the "presumption of public access is at its strongest when it comes to judicial decisions and the underlying documents on which a judge bases a decision." *TML Recovery, LLC v. Cigna Corp.*, 714 F. Supp. 3d 1214, 1221 (C.D. Cal. 2024); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016). All other aspects of the sealing requests are addressed at the end of this Order.

2023, SVBFG failed and was placed into the receivership of the Federal Deposit Insurance Corporation.

A flurry of litigation followed. On November 30, 2023, the Court consolidated this action with five others alleging substantively identical claims, appointed Norges Bank and Sjunde AP-Fonden as joint lead Plaintiffs, and appointed the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as joint lead counsel.[2] ECF No. 82. On January 16, 2024, Lead Plaintiffs filed a Consolidated Amended Complaint ("CAC") alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"). CAC, ECF No. 88. All Defendants moved to dismiss. KPMG, SVB's outside auditor, moved to dismiss the single count Plaintiffs brought against it, a violation of Section 11 of the Securities Act. ECF No. 123.

The Court summarized the CAC allegations against KPMG as follows:

> KPMG was SVB's registered auditing firm from 1994 until the Bank collapsed. [CAC] ¶ 404. KPMG issued unqualified audit reports in connection with SVB's Annual Reports filed on Forms 10-K for the years-ending December 31, 2020, and December 31, 2021 (filed March 1, 2021, and March 1, 2022, respectively), and consented to the incorporation-by-reference of those reports into the Offering Documents. *Id.*
>
> Plaintiffs allege that KPMG issued clean audit reports for SVB including specifically that: (i) "the consolidated financial statements" issued by SVB "present[ed] fairly, in all material respects, the financial condition" of the Bank in accordance with GAAP; (ii) SVB "maintained, in all material respects, effective internal control over financial reporting" as of year-end; (iii) KPMG conducted its "audits in accordance with the standards of the PCAOB," the Public Company Accounting Oversight Board; and (iv) KPMG disclosed each Critical Audit Matter as required by PCAOB standards. *Id.* ¶ 457. According to Plaintiffs, these statements were materially false, misleading, and omitted material facts because SVB suffered from significant and ongoing deficiencies in internal controls concerning the Bank's liquidity, interest rate risk, and ability to hold its HTM securities to maturity. *Id.* ¶ 458.

---

[2] Bernstein Litowitz served as counsel of record for plaintiffs in one of the consolidated cases, *City of Hialeah Employees Retirement System v. Becker*, 23-cv-01697 (N.D. Cal. filed Apr. 7, 2023). Plaintiffs in that action included Asbestos Workers Philadelphia Welfare and Pension Fund Heat & Frost Insulators Local 12 Funds; both remain as named Plaintiffs in the consolidated action. Lead Plaintiffs Norges Bank and Sjunde AP-Fonden were not parties to the *City of Hialeah* action.

ECF No. 180, Order at 7.

On June 13, 2025, the Court denied KPMG's motion to dismiss the complaint. *Id*. The Court found that the CAC sufficiently alleged that KPMG made materially false statements in its audit reports, in violation of Section 11 of the Securities Act—including that SVB's financial statements complied with GAAP, that its internal controls were effective, and that KPMG conducted its audits in accordance with PCAOB standards. Because Plaintiffs' single claim against KPMG was brought pursuant to the Securities Act, Plaintiffs were not required to allege scienter. *Id.* at 24; *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1123 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Employees' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) ("No scienter is required for liability under § 11 or § 12(a)(2); defendants may be liable for innocent or negligent material misstatements or omissions.").

In the months that followed, the parties engaged in extensive discovery. By February 2026, Plaintiffs had received over 1.5 million pages of documents from KPMG and 33 million pages from SVB. Pls.' Mot. at 5, ECF No. 319. On April 15, 2026, Plaintiffs notified KPMG that, having reviewed the discovery received from KPMG and the other Defendants, they now believed they had sufficient facts to allege an Exchange Act claim against KPMG for its 2021 and 2022 audit reports. On April 22, 2026, the Court adopted the parties' stipulated, expedited briefing schedule for Plaintiffs' anticipated motion to amend and KPMG's anticipated motion to dismiss. *See* ECF No. 310.

### B.    The Second Amended Complaint

The CAC was comprised of two parts: Part One, the counts and supporting allegations related to the Exchange Act violations, and Part Two, the counts and supporting allegations related to the Securities Act violations. The SAC appends a "Part Three" at the end of the CAC. Part Three asserts a second claim against KPMG brought under the Exchange Act alongside 300 new allegations regarding KPMG's knowledge, conduct, and intent during the relevant time period, informed by information gathered during discovery.

As set forth in Plaintiffs' motion to amend, the SAC "alleges that KPMG ignored numerous, well-documented red flags—drawn from its own workpapers, internal communications,

United States District Court
Northern District of California

and regulatory findings—while failing to conduct any meaningful analysis of SVB's ability to hold its HTM [held-to-maturity] securities to maturity." Pls.' Mot. at 4. Plaintiffs allege that KPMG blindly accepted management's assertions at face value, failed to perform any meaningful analysis of whether SVB actually possessed the ability to hold its HTM portfolio to maturity, failed to test controls directed at that critical accounting judgment, and disregarded the absence of controls governing HTM classifications altogether. According to Plaintiffs, KPMG possessed extensive evidence—that it deliberately disregarded—that demonstrated SVB lacked the positive intent and ability to hold its HTM portfolio to maturity, yet nevertheless failed to meaningfully investigate, analyze, or reconcile that evidence before issuing a clean audit. *See, e.g.*, SAC ¶¶ 786-88 (quoting SVB memo from KPMG's internal files that explained that SVB was "add[ing] risk exposures to HTM" to "enhance return[s]" and "shield [OCI] in a ris[i]ng rate environment.").

## II.    LEGAL STANDARD

### A.    Rule 15

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." The standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). This is because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). A district court should therefore deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In the Ninth Circuit, "[n]ot all of the factors merit equal weight," rather "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Absent such showing, or a strong showing under the above remaining factors, "there exists

4

a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC*, 316 F.3d at 1052 (emphasis in original).

### B.    Rule 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is facially plausible. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, the court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

### A.    Motion to Amend

#### 1.    The Proposed SAC is not futile.

KPMG advances three reasons as to why Plaintiffs' amendment is futile: (1) because the new claim is "barred by the statute of limitations," *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008); (2) because Plaintiffs "waived" or "abandoned" the claim, *see, e.g.*, *Hallas v. Ameriquest Mortg. Co.*, 280 F. App'x 667, 668–69 (9th Cir. 2008); and (3) because the claim fails as a matter of law, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). None of these reasons are persuasive.

##### a.    The Amendment is not barred by the statute of limitations.

The statute of limitations on a private plaintiff's claim under Section 10(b) runs "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1); *York County ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 464 (9th Cir. 2023). A fact is "discovered" for statute-of-limitations purposes if "a 'reasonably diligent plaintiff . . . can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" *Id.* at 464-65 (quoting *City of Pontiac Gen. Empls. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)). A defendant, in turn, "establishes that a complaint is time-barred . . . if it conclusively shows that either (1) the plaintiff could have pleaded an adequate complaint based on facts discovered prior to

United States District Court
Northern District of California

the critical date and failed to do so, or (2) the complaint does not include any facts necessary to plead an adequate complaint that were discovered following the critical date." *York Cnty.*, 65 F.4th at 466. KPMG contends that the former is true here, and that Plaintiffs could have adequately pleaded their Exchange Act claim but chose not to.

The Court disagrees; Plaintiffs could not have pleaded an adequate complaint until they had the benefit of discovery. Large swaths of Part Three to the SAC have been sealed at KPMG's request precisely because the documents cited disclose, per KPMG, "confidential audit information . . . reflected in workpapers and other audit documents." ECF No. 323 at 3, 6-7. In response to this evidence, KPMG points to Bernstein Litowitz's representation in a case that was later consolidated with the instant action, *City of Hialeah*. *See infra* n.1; KPMG Opp'n at 2. The complaint in that action alleged an Exchange Act claim against KPMG similar to the one alleged here, though with significantly less evidentiary support. As Plaintiffs explain in their reply brief, "[t]he 34-page *Hialeah* Complaint was filed less than one month after SVB's collapse, based on limited publicly available information." Pls.' Reply at 3, ECF No. 343. Ten months later, and after an extensive investigation, Bernstein Litowitz (and Kessler Topaz) filed a 290-page consolidated complaint that did not include an Exchange Act claim against KPMG. At the time the CAC was filed, Plaintiffs did not have access to the internal work papers KPMG produced during discovery. As a result, Plaintiffs and their counsel concluded that they did not have enough facts to allege KPMG's scienter with the particularity required by the PSLRA.

KPMG agrees that Plaintiffs lacked the facts necessary to bring such a claim when Plaintiffs filed their CAC. Indeed, the primary argument animating their motion to dismiss the SAC is that, even now, Plaintiffs lack sufficient evidence to bring a fraud claim. *See generally* KPMG Mot. Notwithstanding their position, KPMG now argues that Bernstein Litowitz, as the law firm representing the *City of Hialeah* plaintiffs, had the requisite evidence to bring an Exchange Act claim against KPMG shortly after SVB failed, did so in the *City of Hialeah* action, and then waived their right to replead the claim when they failed to reallege it in this separate action as a count in the CAC. The only other scenario, KPMG contends, is that Bernstein Litowitz filed the *City of Hialeah* complaint without sufficient evidentiary support in violation of their Rule

11 obligations.  But KPMG ignores the most obvious explanation: Bernstein Litowitz, on behalf of different clients, filed a complaint that they, in good faith, believed would be supported when the dust had settled around SVB's titanic failure.  That complaint included a claim against KPMG that, upon reflection and the benefit of new information, they ultimately decided could not be sustained by the evidence available to them.  Then, when KPMG produced documents and other materials during discovery, Bernstein Litowitz learned that they had in fact been right the first time.  The timeline indicates that the attorneys representing Plaintiffs did what any good attorneys should do when they realize a potential claim lacks sufficient basis: they opted not to bring it.

What's more, the key inquiry is whether Plaintiffs "could have pleaded an *adequate* complaint based on facts discovered prior to the critical date."  *York Cnty.*, 65 F.4th at 466 (emphasis added).  KPMG seeks to seal 64% of the 85 pages in the SAC detailing KPMG's scienter with Plaintiffs, citing 41 separate workpapers from KPMG's internal files; that is enough to demonstrate Plaintiffs lacked the requisite facts before they had the benefit of KPMG's document productions.  *See* Pls.' Reply at 4.  Given the astronomical volume of documents produced in this action by all parties and the tight timeline, the Court finds that Plaintiffs acted with the requisite efficiency in bringing the motion to amend.

###### b.    The Section 10(b) Claim is not waived and does not fail as a matter of law.

KPMG's other two arguments fair no better.  First, KPMG's contention that Plaintiffs waived their Section 10(b) claim is nonsensical.  KPMG is right that a plaintiff may waive a claim if he has alleged it in an earlier complaint and then voluntarily dismissed it.  But that is not what happened here: *these* Plaintiffs never brought *this* claim.  The best KPMG can point to is that Bernstein Litowitz brought a Section 10(b) claim against KPMG on behalf of *a different plaintiff*.  The Court has no basis to conclude that Lead Plaintiffs had anything to do with that decision, and they should not be prejudiced because of decisions made by counsel before Lead Plaintiffs engaged them, even assuming Bernstein Litowitz did something wrong (an unsupported assumption rejected by this Court, *see infra*).  Before the SAC, Lead Plaintiffs had only ever filed a single pleading, the CAC.  They can be held to the claims made in the CAC and no more.

United States District Court
Northern District of California

KPMG's final reason to deny Plaintiffs' motion is that the SAC fails to state a claim on the merits. The Court addresses KPMG's dismissal arguments below. Because the Court finds that Plaintiffs' allegations withstand KPMG's motion to dismiss, Plaintiffs' motion to amend is not futile on these grounds either.

### 2. The Amendment is not the result of undue delay.

KPMG's claims of undue delay are inextricable with its statute of limitations argument, and they fail for identical reasons. As discussed above, Plaintiffs brought this claim shortly after they received KPMG's workpapers. Without those documents, Plaintiffs contend they would not be able to demonstrate KPMG's scienter. There is no "unjust delay" where, as here, plaintiffs "waited until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Mancuso v. USAA Sav. Bank*, No. 2:20-cv-01656-RFB-BNW, 2021 WL 3024282, at *4 (D. Nev. July 16, 2021) ("Waiting until the movant has sufficient evidence upon which to base a claim is a satisfactory reason for not initially bringing that claim."); *Story v. Midland Funding LLC*, No. 3:15-cv-0194-AC, 2016 WL 5868077 at *4 (D. Or. Oct. 7, 2016) ("Alleging new claims based on new information does not cause undue delay, even if some of the facts underlying the new claims were available to [plaintiff] when she filed her initial complaint."); *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-cv-00046-KJM-CKD, 2016 WL 3126108, at *5 (E.D. Cal. June 1, 2016) (Plaintiff "has provided a satisfactory explanation for moving to amend at this time, namely that it waited until it had sufficient evidence to support amendment.").

### 3. The Amendment does not significantly prejudice KPMG.

Prejudice "carries the greatest weight" in the amendment analysis. *Eminence Capital, LLC*, 316 F.3d at 1052. To overcome Rule 15's liberal policy with respect to amendment of pleadings, the showing of prejudice must be substantial. *Genentech, Inc. v. Abbott Lab'ys*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In general, neither delay resulting from the proposed amendment, nor the prospect of additional discovery needed by the non-moving party, in itself constitutes a sufficient showing of prejudice. *Id.* at 530-32. Parties successfully opposing amendment have established prejudice by establishing that the new claims would alter the nature of the litigation,

*see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), or by demonstrating that a motion to amend was made after discovery had closed or was about to close, *see, e.g., Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of plaintiff's motion for leave to amend to add additional causes of action after discovery had already closed).

KPMG has not shown that the amendment will cause it serious prejudice.  Lead Plaintiffs informed KPMG of the amendment before the class certification hearing and months before the close of fact discovery; neither KPMG nor any of its co-defendants have been deposed; the parties have taken only 15% of their allotted depositions; and the Court stayed the class certification hearing, discovery, and all other deadlines.  KPMG has always been a defendant in this action and has been fighting similar, if distinct, claims based on the same conduct since the case's outset. Given the circumstances, KPMG is well positioned to defend against this new claim.  *See Calderon v. Tulare Reg'l Med. Ctr.*, 1:17-cv-0040-BAM, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018) (any prejudice that may result from granting leave to amend "is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred.").

\* \* \*

Because the proposed SAC is not futile, is not a function of undue delay, and does not significantly prejudice KPMG, Plaintiffs' motion to amend is GRANTED.

**B.      Motion to Dismiss**

To prevail on a claim for violations of Section 10(b), "a plaintiff must prove six elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).  KPMG challenges the SAC on two of those elements: scienter and loss causation.

### 1.    Plaintiffs allege scienter with the requisite particularity

To sufficiently plead scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  "A complaint can plead scienter by raising a strong inference that the defendant possessed actual knowledge or acted with deliberate recklessness." *New Mexico State Inv. Council v. Ernst & Young LLP,* 641 F.3d 1089, 1095 (9th Cir. 2011) (hereinafter "*New Mexico*") (citing *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009)).  The Court must make a dual inquiry to determine scienter: "first, [the court] will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, [the court] will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of . . . deliberate recklessness." *Zucco Partners,* 552 F.3d at 992.  The Court must consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).  To qualify as "strong," an inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*  That said, the inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre," nor must it be the "most plausible" inference.  *Id.* at 324.

In the context of an audit, "[s]cienter requires more than a misapplication of accounting principles.  The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that . . . no reasonable accountant would have made the same decisions if confronted with the same facts." *In re Software Toolworks Inc.,* 50 F.3d 615, 628 (9th Cir. 1994) (quoting *In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1426 (9th Cir. 1994) (internal quotation marks and alterations omitted).  Here, Plaintiffs allege that KPMG knowingly or with deliberate recklessness disregarded facts contradicting the clean audit opinions it issued for FY-2021 and FY-2022.  Plaintiffs appear to concede that no single allegation demonstrates KPMG's fraudulent

intent but argue instead that the allegations in the SAC suffice when considered collectively. The Court agrees.

The Ninth Circuit's decision in *New Mexico* and the "red flag" doctrine it discusses guide the Court's analysis here. While GAAP or PCOAB violations that are "minor or technical in nature" are generally not enough to support a finding of scienter, "allegations of recklessness have been sufficient where defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *New Mexico*, 641 F.3d 1089 (internal quotation marks omitted). "[T]he more facts alleged that should cause a reasonable auditor to investigate further before making a representation, the more cogent and compelling a scienter inference becomes." *Id.*

The SAC alleges that KPMG was repeatedly confronted with obvious and escalating red flags that directly contradicted management's assertion that SVB possessed the ability to hold its HTM portfolio to maturity, but nevertheless consciously disregarded that information and issued clean audit opinions anyway. As evidence of this contention, among other things Plaintiffs point to:

(i) Federal Reserve and internal audit findings identifying "fundamental shortcomings" in the Bank's liquidity risk management framework, governance, and controls, SAC ¶¶ 822-42;

(ii) liquidity stress tests projecting substantial shortfalls under foreseeable stress scenarios, indicating that the Bank could not satisfy its liquidity needs without resorting to HTM sales, *id.* ¶¶ 809-21, 880-90;

(iii) persistent EVE-risk limit breaches reflecting heightened exposure to interest-rate risk, as well as regulator criticisms of the Bank's interest-rate risk models, *id.* ¶¶ 843- 52, 891-95, 909-11;

(iv) internal documents showing that SVB expanded its HTM portfolio to enhance returns and shield AOCI while simultaneously accumulating interest-rate and liquidity risk, *id.* ¶¶ 788, 865-66; and

(v) the Bank's repeated efforts to sell or reclassify securities during FY-2022, including in direct response to projected deposit outflows, *id.* ¶¶ 896-902.

*See* Pls.' Opp'n to MTD at 11, ECF No. 342.

Instead of addressing any of the flags above, the SAC alleges that KPMG based its clean audit opinions almost entirely on the Bank's self-serving representations. In its unqualified audit opinions for FY-2021 and FY-2022, KPMG represented to investors that (1) SVB's financial

statements presented fairly, in all material respects, the financial position of the Bank, in conformity with GAAP; (2) SVB maintained, in all material respects, effective internal controls over financial reporting; (3) KPMG conducted its audits in accordance with the standards of the PCAOB; and (4) KPMG appropriately disclosed each Critical Audit Matter ("CAM") as required by PCAOB standards.  SAC ¶ 750.

KPMG knew, or deliberately disregarded, facts that directly contradicted those opinions. KPMG knew that: SVB was without a Chief Risk Officer for eight months, *id.* ¶¶ 938-39; HTM securities made up more than 40% of SVB's total assets and nearly 80% of its total securities, *id.* ¶ 904; interest rates were likely to rise and leave SVB helpless to meet liquidity needs without selling its HTM portfolio, *id.* ¶ 872; regulators had conveyed significant and ongoing concerns with SVB's current strategy, *id.* ¶¶ 822-36; and knew that SVB's reclassification strategy was aimed specifically at obscuring the extent of fair market losses, *id.* ¶ 787.  To the Court, these allegations "amount[] to [an] audit so deficient that the audit amounted to no audit at all." *New Mexico*, 641 F.3d at 1100.

In particular, the GAAP violation at issue here—the classification of nearly 80% of the Bank's investment portfolio as HTM, representing over 40% of total assets—supports a strong inference of scienter. ¶784; *see In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) ("significant violations of GAAP standards can provide evidence of scienter . . ."). *New Mexico* teaches that an auditor's failure to adequately scrutinize issues of extraordinary significance—such as a single transaction that represented a quarter of the company's total revenue—is more than negligence because "an auditor, in fulfilling duties of public trust, should take a long hard look" at such matters. *New Mexico*, 641 F.3d at 1099 (finding scienter adequately alleged where the auditor failed to meaningfully scrutinize a transaction representing "$700 million, roughly a quarter of Broadcom's reported revenue in 2006 of $2.5 billion"); *see also In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) ("substantial [accounting] errors give rise to an inference that the defendant acted recklessly or intentionally used deceptive accounting principles to disguise serious problems").

The facts of the instant action aren't so different. Plaintiffs allege that SVB's decision to radically pivot towards HTM securities was the single most consequential accounting determination affecting SVB's financial condition. During FY-2021, SVB's HTM portfolio grew from approximately $16 billion to $98 billion—a 500% increase in a single year. SAC ¶¶ 728, 784. By FY-2022, the fair value of SVB's HTM portfolio deteriorated sharply, with unrealized losses swelling to over $15 billion by year-end 2022, which represented approximately 94.7% of SVB's total shareholders' equity of $16 billion. *Id.* ¶¶ 903-05.

To classify the relevant securities as HTM in its balance sheets, SVB had to demonstrate its "positive intent and ability" to hold those securities to maturity. *See id*. ¶ 781. When considered holistically, no reasonable accountant could believe that SVB would be able to respond to "[c]hanges in market interest rates" or "[n]eeds for liquidity" arising from "the withdrawal of deposits" without selling off some of the HTM assets. *Id.* (quoting ASC-320-10). But KPMG issued an unqualified opinion for both FY-2021 and FY-2022 anyway. *Id.* ¶ 750. This is enough.

KPMG's attempts to distinguish *New Mexico* are unavailing. KPMG repeatedly emphasizes the factual differences in that case, and they are significant. There, when management made false claims about a $400 million transaction, the auditor indicated its suspicions by requesting documentation to confirm the stock option grant was not backdated. *New Mexico*, 641 F.3d at 1099. When the company refused to provide corroboration, the auditor never followed up. *Id.* Worse yet, the auditor subsequently accepted fabricated documents "that could not possibly have been valid," because they showed committee approvals on dates when one of two necessary committee members had already died. *Id.* at 1100. But here, KPMG likewise accepted self-serving representations from management on SVB's most consequential accounting decision, i.e., the HTM classification. To the extent KPMG followed up, it allowed itself to be placated despite frequent and periodic red flags. And KPMG also accepted and endorsed statements that could not be true under foreseeable stress conditions, namely that SVB could hold the HTM securities to maturity in the event of need for liquidity. GAAP requires that to be so to permit the HTM classification, but KPMG failed to push back against SVB's insistence in the HTM classification.

The Court is likewise unconvinced that KPMG lacks the requisite motive to give rise to an inference of scienter.  As an initial matter, the lack of an obvious motive only makes it harder to demonstrate scienter, not impossible.  *See Tellabs*, 551 U.S. at 325 (the absence of a motive allegation is not fatal to a securities law claim at the motion to dismiss stage).  Regardless, Plaintiffs allege a compelling motive, at least as it relates to KPMG's FY-2022 audit.  The SAC alleges that during the period KPMG was working on the FY-2022 audit, SVB notified it that it intended to seek competitive bids for its audit work. SAC  ¶¶ 912-13. KPMG, caught completely off-guard, responded by actively courting the Bank's business, including meeting with SVB executives and considering a multi-million-dollar sponsorship commitment associated with Defendant Becker. SAC ¶¶ 914-16.  These facts demonstrate that KPMG had the "motivation to overlook [accounting issues] in order to protect its own source of lucrative accounting and consulting fees," a finding that can "strengthen an inference of scienter." *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 215 (1st Cir. 2005).  When viewed alongside KPMG's repeated failure to investigate contradictory audit evidence, challenge management's assumptions, or revisit its conclusions despite mounting warning signs, they further support the inference that KPMG had incentives to avoid dissatisfying SVB.

### 2.    Plaintiffs sufficiently allege loss causation.

As Plaintiffs note, the Court's previous Order concluded that SVB's false and misleading HTM accounting was adequately alleged to be a substantial cause of investor losses. ECF No. 180 at 22.  KPMG offers no substantive explanation as to why that ruling would not extend to its audit opinions. Nor could it, as the SAC pleads that market participants themselves "trac[ed]" each corrective event "back to 'the very facts about which [KPMG] lied'" by expressing heightened concerns about SVB's HTM accounting.  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).

* * *

For the foregoing reasons, KPMG's motion to dismiss the SAC is DENIED.

## IV. MOTIONS TO SEAL

The public has a longstanding "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Public access bolsters "understanding of the judicial process" and "confidence in the administration of justice," and it provides a "measure of accountability" for courts. *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1096 (9th Cir. 2016). Accordingly, the local rules of this District caution that "[o]nly in rare circumstances should a party seek to file portions of a pleading or brief under seal." L.R. 79-5. There is a "strong presumption in favor of access" to court records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

To overcome this, a party who seeks to seal a record must "articulate compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178–79 (cleaned up). Under the "stringent" compelling reasons standard, the Court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Auto Safety*, 809 F.3d at 1096. And while a lower "good cause" standard applies to discovery material included with motions that are only "tangentially related to the underlying cause of action," *Auto Safety*, 809 F.3d. at 1097, the default compelling reasons standard applies to motions for leave to file an amended complaint because such motions are inherently central to the merits of a case, *see Apple Inc. v. Rivos, Inc.*, No. 22-CV-02637-PCP, 2024 WL 748394, at *2 (N.D. Cal. Feb. 23, 2024).

Here, and as required under Northern District Local Rule 79-5, Plaintiffs filed motions to consider whether another party's material should be sealed for the motion to amend, the proposed SAC, Plaintiffs' opposition to KPMG's motion to dismiss, and Plaintiffs' reply in support of its motion to amend. ECF Nos. 319, 341. The motions reflect redactions requested by KPMG and Defendant Becker related to their respective productions.[3]

---

[3] The initial motion also identifies documents cited (and accordingly redacted) in either the proposed SAC or the motion to amend that were designated confidential by the Director Defendants or Defendant Daniel Beck. Because no statements were filed by those Defendants consistent with Local Rule 79-5(f), the Court assumes that those parties have waived their confidentiality designations and DENIES the motion as to redactions based on those materials.

United States District Court
Northern District of California

### A.    KPMG

Despite the standard articulated above, large swaths of the SAC and briefing are redacted at KPMG's request.  *See* ECF Nos. 319, 341.  While portions of the SAC and briefing may contain information that satisfies the compelling reasons standard, especially where those portions quote KPMG's work papers directly, KPMG's proposed redactions are not remotely narrowly tailored.  To the Court, most of the proposed redactions constitute high-level conclusions, not proprietary business information or audit methodology.  Additionally, KPMG fails to describe in any particularized or non-conclusory way how the material it seeks to keep sealed would reveal proprietary internal tools or methodologies or permit competitors to reverse-engineer KPMG's audit approach.  *See* ECF No. 323

Accordingly, KPMG's motion is DENIED.  KPMG is ORDERED to submit any renewed request identifying narrower redactions within 10 days of this order.  If KPMG chooses not to renew its motion as to certain documents, it must work with Plaintiffs to file those unsealed documents on the public docket within 10 days of this Order.  Failure to limit proposed redactions to genuinely sensitive information will result in denial of the motion and an order requiring that all documents be filed on the public docket.

### B.    Becker

Defendant Becker asks the Court to seal the portions of the SAC and related briefing that cites to material he produced in this litigation.  *See* ECF Nos. 323, 344.  Because Becker's document production was sourced entirely from documents produced to him by the Federal Deposit Insurance Corporation in another litigation, different regulatory authorities were required to weigh in before Becker could produce the documents to another party.  ECF No. 322.  These authorities sanctioned Becker's production provided he maintained the confidentiality of any confidential supervisory information ("CSI") contained therein.  Given the millions of pages implicated, Becker blanket designated the entirety of his production as CSI.  Becker's request here seeks to seal material solely on the ground that it "may contain" CSI, the confidentiality of which can only be waived by the regulatory authorities.  The Court understands that Plaintiffs have notified the authorities of Becker's sealing request and have asked the Regulators for their position

United States District Court
Northern District of California

on the confidentiality of the relevant documents.  ECF No. 324.  Given Plaintiffs on going consultation with the regulators, the Court provisionally GRANTS Becker's request to seal the portions of the relevant filings while the regulators consider the issue.

**V.      CONCLUSION**

Plaintiffs' motion to amend the operative complaint is GRANTED, KPMG's motion to dismiss the proposed SAC is DENIED, and the motions to seal are GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.  KPMG may renew a request to seal the relevant filings within 10 days of this Order.[4]  As discussed on the record, the Court will discuss the case schedule at the case management conference set for August 13, 2026, at 11:00 a.m.

**IT IS SO ORDERED.**

Dated: August 5, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

---

[4] The Court will order Plaintiffs to file unsealed versions of the SAC and related briefing once the Court has considered any narrowly-tailored redactions proposed by KPMG.